Filed 4/19/13  P. v. Bustamante CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DOMINIQUE BUSTAMANTE,<br><br>    Defendant and Appellant. | F063189<br><br>(Super. Ct. No. F10902134)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Timothy A. Kams, Judge.

Carol Foster, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna, Barton Bowers and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Dominique Bustamante was charged with two counts of sale of methamphetamine (counts 1 & 3), two counts of active participation in a criminal street gang (counts 2 & 5), and one count of transporting methamphetamine for sale (count 4).

The jury found Bustamante guilty as charged on all counts. He admitted a prior prison term allegation. On August 22, 2011, Bustamante was sentenced to a total term of six years eight months, with the terms for some counts stayed and others to run concurrently.

Bustamante appealed, contending there is insufficient evidence to support the Penal Code[1] section 186.22, subdivision (a) (section 186.22(a)) convictions in counts 2 and 5, the substantive offense of active participation in a criminal street gang. Specifically, he contends there is insufficient evidence establishing that the underlying drug offenses were committed with another gang member. As to count 2, the February 18, 2010, drug sale, the People concede the issue and we accept the concession. As to count 5, we will conclude there is sufficient evidence to support the verdict that the February 4, 2010, drug sale involved another gang member. The count 2 conviction is therefore reversed. In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL SUMMARY

Detective Patricia Varela was working in an undercover capacity in a drug-buy operation during February of 2010. The focus of the operation was drug activity in the City of Selma, with two Bulldog gang subsets, the Northside Selma Bulldogs and Barrio Rifa Bulldogs being targeted. On February 4, 2010, around 5:30 p.m., Varela was in a car parked in a McDonald's lot. She was alone in the car, but monitored by wire and sight.

---

[1] All further statutory references are to the Penal Code unless noted otherwise.

Varela placed a telephone call to a woman named Leticia Orozco and asked Orozco to sell her some methamphetamine. A few minutes later, Orozco called Varela back and stated she was in the parking lot. Varela described her car to Orozco and a gray car pulled up next to the detective. A man, Bustamante, was driving the car, with Orozco in the front passenger seat. The detective walked over to the passenger side of the gray car and Orozco rolled down the window. Varela handed Orozco money; Orozco handed Varela a plastic baggie containing .759 grams of methamphetamine.

On February 18, 2010, around 2:45 p.m., Varela again placed a call to Orozco's phone number. At this point in time, Orozco was the target of the investigation. This time, however, a man answered. Varela explained she was trying to reach Orozco in order to purchase some drugs. Varela described her car and the McDonald's location and asked the man if he remembered her from the sale on February 4; he did. The man agreed to meet Varela at the same location. Varela drove to the McDonald's lot. The detective was wearing a wire that sent a live feed.

After arriving at the McDonald's lot, Varela placed a call to Orozco's number and the same man answered. Varela told him she was in the parking lot and waiting for him; the man responded he was on his way and driving a gray Chevy Lumina. Around 3:45 p.m., the man arrived in the car he had described and Varela walked over to his car. The man, Bustamante, insisted they go to a different location to weigh the drugs. Varela agreed and followed Bustamante to the parking lot of the Paradise Café.

Bustamante called Varela and asked if she would be more comfortable if a female delivered the narcotics; Varela said that was fine. About 15 to 20 minutes later, a woman approached Varela's car and climbed inside. Varela asked the woman if she knew Orozco; the woman did not. Varela asked if the woman knew the man driving the gray car; she said she did and that his name was Dominique (Bustamante). The woman handed Varela a plastic baggie of methamphetamine; the baggie had bulldog emblems on it.

3.

The gray car used on February 4 and the gray car used on February 18 were the same car. Bustamante was the driver on both dates.

At trial, Sheriff's Detective Dewayne Chatman testified as an expert on criminal street gangs in Fresno County. Over the course of his career, Chatman had numerous contacts with, and investigated multiple crimes committed by, members of the Fresno Bulldogs, a subset of the Norteno criminal street gang. Chatman testified that the Bulldogs were a criminal street gang in Fresno County and one of their primary activities was drug sales.

Chatman had "hundreds" of contacts with Bulldog gang members and had spoken with many Bulldog members about the gang in his role as a gang investigator. He also had participated in numerous probation and parole searches and execution of search warrants against Bulldog gang members. Social media accounts of gang members, including Facebook, My Space, and websites, were monitored. Chatman also had conducted surveillance of Bulldog gang members on multiple occasions and had information from the Department of Corrections specific to the Bulldog gang.

In February of 2010, Chatman was conducting an operation that was investigating street level suppliers of drugs and specifically, sales of narcotics by members of the Fresno Bulldogs gang and various subsets of that gang, primarily Selma Bulldogs. A wiretap was in place for about 60 days and phone calls of multiple Bulldog gang members were monitored. During the course of that operation, Chatman became familiar with Bustamante's name. It was suspected that Bustamante was a street level supplier of drugs.

Chatman opined that Bustamante was an active member and participant in the Fresno Bulldogs criminal street gang. Bustamante had admitted in jail classification questionnaire forms that he was a member of the gang; he also had gang tattoos, including a Bulldog on his chest. Chatman also was of the opinion that the drug

packaging from the February 18 sale was a form of branding by the Fresno Bulldogs that identified the drugs as a Bulldogs gang product.

Although Bustamante had tattoos indicating he identified with the subset, Eastside Fresno Dog, and at other times indicated self-identification with the McKenzie Street Dog, law enforcement also identified him as an active participant in Barrio Selma Rifa Bulldogs, in part, because he "work[ed] in concert" with another person who was a member of that subset, namely Orozco. Initial investigations identified Bustamante as an associate member of Barrio Selma Rifa or Selma Bulldogs, both subsets of the Fresno Bulldogs.

Chatman testified that identification of gang members was made using a ten-point criteria. Some of the criteria used included self-identification, jail classification, tattoos, reliable sources such as probation and parole files or officers, police contact, writings including graffiti, and conversations including telephone calls. Chatman stated that Orozco was a Barrio Selma Rifa Bulldogs member, a subset of the Fresno Bulldogs, based upon "police reports."

The jury found Bustamante guilty as charged on all counts. He admitted the prior prison term allegation.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE FOR GANG OFFENSE

Bustamante contends there is insufficient evidence to support the section 186.22(a) convictions for the substantive offense of active participation in a criminal street gang. Specifically, that there is insufficient evidence establishing that the underlying drug offenses were committed with another gang member.

***Standard of Review***

When assessing a challenge to the sufficiency of the evidence, we examine the entire record in the light most favorable to the judgment below to determine whether it contains substantial evidence from which a reasonable trier of fact could find the

5.

defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "The standard is the same, regardless of whether the prosecution relies mainly on direct or circumstantial evidence. [Citation.]" (*People v. Vazquez* (2009) 178 Cal.App.4th 347, 352 (*Vazquez*).)

"'Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it.' [Citation.]" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245.) Generally, the testimony of a single witness is sufficient to prove a disputed fact unless the testimony is inherently improbable or physically impossible. (*People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. Scott* (1978) 21 Cal.3d 284, 296.)

The trier of fact makes credibility determinations and resolves factual disputes. (*People v. Estrella* (1995) 31 Cal.App.4th 716, 724-725 (*Estrella*).) We will not substitute our evaluation of a witness's credibility for that of the fact finder. (*Vazquez, supra*, 178 Cal.App.4th at p. 352.) In conducting a review for sufficiency of the evidence, we presume in support of the judgment the existence of every fact the trier of fact reasonably could deduce from the evidence. (*People v. Lee* (2011) 51 Cal.4th 620, 632.)

### *Count 2*

In *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1132 (*Rodriguez*), the California Supreme Court held that a conviction under section 186.22(a), requires that the defendant commit the underlying felony with at least one other gang member. There was no evidence that the woman assisting Bustamante with the February 18 drug sale (the count 2 offense), was a gang member. The People concede the point. Therefore, we reverse the count 2 conviction.

*Count 5*

The section 186.22(a) substantive gang offense is comprised of three elements: (1) active participation in a criminal street gang; (2) knowledge that the gang's members have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. (*People v. Lamas* (2007) 42 Cal.4th 516, 523.) In *Rodriguez,* the California Supreme Court clarified that in order to satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help members of his or her gang commit felonious criminal conduct. (*Rodriguez, supra,* 55 Cal.4th at p. 1132.) "The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." (*Ibid.*)

Here, only the evidence to support the third element is at issue. Bustamante contends the evidence is insufficient to establish that the count 5 offense was committed in conjunction with another gang member because of a lack of evidence that Orozco was a gang member. The evidence that Orozco was a gang member consists of the expert opinion offered by Chatman. Bustamante contends the expert opinion is insufficient.

Evidence Code section 801 limits expert opinion testimony to an opinion that is "[b]ased on matter ... perceived by or personally known to the witness or made known to [the witness] at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which [the expert] testimony relates ...." (Evid. Code, § 801, subd. (b).) Matter that ordinarily is inadmissible properly may form the basis of an expert's opinion. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 653, citing *People v. Gardeley* (1996) 14 Cal.4th 605, 618-619.)

It is well settled that expert testimony about gang culture, habits, and membership is the type of evidence a jury may rely on to reach a verdict on a gang-related offense or a finding on a gang allegation. (*People v. Valdez* (1997) 58 Cal.App.4th 494, 506 (*Valdez*);

*People v. Ferraez* (2003) 112 Cal.App.4th 925, 930; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196.) "[E]vidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation--including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like--can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.]" (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.)

In *People v. Killebrew, supra,* 103 Cal.App.4th at pages 656-657, this court examined and identified the following topics upon which expert gang testimony was properly received: (1) the size, composition or existence of a gang; (2) gang turf or territory; (3) an individual defendant's membership in, or association with, a gang; (4) the primary activities of a specific gang; (5) motivation for a particular crime, generally retaliation or intimidation; (6) whether and how a crime was committed to benefit or promote a gang; (7) rivalries between gangs; (8) gang-related tattoos, gang graffiti and hand signs; and (9) gang colors or attire. As we noted, the list was not exhaustive or an exclusive list of all gang topics for which expert opinion may be admitted. (*Id.* at p. 657.)

In any event, courts have without question permitted law enforcement officers to provide expert testimony regarding gangs. (See, e.g., *People v. Champion* (1995) 9 Cal.4th 879, 919; *People v. Fudge* (1994) 7 Cal.4th 1075, 1091; *People v. Hawthorne* (1992) 4 Cal.4th 43, 52.) The record reflects that over the course of his career, Chatman had numerous contacts with, and investigated multiple crimes committed by, members of the Bulldog gang and its various subsets. Chatman had "hundreds" of contacts with Bulldog gang members and had spoken with many Bulldog members about the gang. Law enforcement had been monitoring and reporting on social media accounts of gang members, including Facebook, My Space, and websites. Chatman also had conducted surveillance of Bulldog gang members on multiple occasions and had information from

the Department of Corrections specific to the Bulldog gang. In 2010, Chatman was conducting an operation that was investigating street level suppliers of drugs and specifically, sales of narcotics by members of the Fresno Bulldog gang and various subsets of that gang, primarily Selma Bulldogs. A wiretap was in place for about 60 days and phone calls of multiple Bulldog gang members were monitored.

All of this background and information, specifically information from the 60-day investigation of the Selma Bulldog subset, was available to and known by Chatman at the time he offered his opinion that Orozco was a Selma Bulldog gang member. Females are known to be gang members. (See *In re Carleisha P.* (2006) 144 Cal.App.4th 912, 916.)

To the extent Bustamante claims Chatman's expert opinion is unsupported because the two police reports specifically referencing the February 4 and 18 drug buys do not identify Orozco as a gang member, his claim lacks merit. Chatman testified that both those incidents were part of the gang operation being conducted. Chatman and Varela were working the same narcotics sales operation by Bulldog gang members and Varela had at one point targeted Orozco.

However, when Chatman states his opinion about Orozco is "based off of the police reports," it is defense counsel who *assumes* the reports to which Chatman refers are just the reports of the February 4 and 18 drug buys. Defense counsel's response to Chatman's testimony is, "Okay. And assuming the police reports are true, whichever report it is you are looking at, the two versions we found." The People objected to defense counsel's remark and the objection was sustained. Defense counsel did not ask Chatman to elaborate further on the sources he used in forming his opinion of Orozco. The jury reasonably could infer that Chatman was referring to all the reports prepared by police detailing all of the information and activity of the two-month operation investigating the Selma Bulldogs.

Bustamante is correct in that an expert may not testify to incompetent hearsay. (*People v. Killebrew, supra,* 103 Cal.App.4th at p. 659.) Chatman, however, did not

9.

testify to incompetent hearsay in the guise of stating a reason for his opinion. Moreover, inadmissible matter can, as we noted previously, form the basis of an expert's opinion. (*Id.* at p. 653, citing *People v. Gardeley, supra,* 14 Cal.4th at pp. 618-619.)

Because an expert's need to consider extrajudicial matters and a jury's need for information sufficient to evaluate an expert opinion may conflict with a defendant's interest in avoiding substantive use of unreliable hearsay, disputes in this area must generally be left to the sound judgment of the trial court. (*People v. Catlin* (2001) 26 Cal.4th 81, 137.) Here, there was no attempt to introduce the details of any inadmissible hearsay forming the basis of Chatman's opinion into evidence.

The cases cited by Bustamante for the proposition that nonspecific hearsay obtained from reading a police report is not competent evidence are inapposite to this case. In the three cases cited by Bustamante, gang experts were attempting to cite non-specific details of police reports, specifically inadmissible hearsay portions of those reports, in order to establish the predicate offenses of a gang. (*In re I.M.* (2005) 125 Cal.App.4th 1195, 1206-1207; *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1003-1004; *In re Leland D.* (1990) 223 Cal.App.3d 251, 259-260.)

An expert may testify concerning the gang membership of particular individuals. (*Valdez, supra,* 58 Cal.App.4th at p. 506.) The jury was instructed that it was not required to accept as true an expert's opinion; it should evaluate the expert's believability; and consider the reasons given by the expert for the opinion. The jury also was instructed to disregard any opinion it considered unsupported by the evidence.

We decline Bustamante's invitation to conclude, as a matter of law, that the testimony of one expert witness as to the gang membership of a particular individual is insufficient evidence of gang membership. The testimony of one witness is sufficient to prove a fact. (*People v. Young, supra,* 34 Cal.4th at p. 1181.) The trier of fact makes credibility determinations and resolves factual disputes. (*Estrella, supra,* 31 Cal.App.4th

at pp. 724-725.)  An appellate court will not substitute its evaluation of a witness's credibility for that of the fact finder.  (*Vazquez, supra,* 178 Cal.App.4th at p. 352.)

## II.  SECTION 654

Bustamante argues in his opening brief that the term imposed on the count 2 offense, the section 186.22 substantive gang offense, should have been stayed pursuant to section 654.  The People conceded in their respondent's brief the term imposed for count 2 should be stayed, pursuant to the holding in *People v. Mesa* (2012) 54 Cal.4th 191, 197-198.  In the supplemental briefing, both Bustamante and the People concede the count 2 conviction must be reversed.

In light of our conclusion that *Rodriguez, supra,* 55 Cal.4th at page 1125, requires reversal of the count 2 conviction, the issue of application of section 654 is moot.

## III.  SECTION 4019 - EQUAL PROTECTION

Bustamante's final contention on appeal is that additional presentence credits should be awarded to him based upon the amendments to section 4019, operative October 1, 2011.  He contends failure to award the additional credit constitutes a violation of equal protection principles.  This court has previously addressed, and rejected, the equal protection arguments raised here by Bustamante in our decision in *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*).

Section 4019, subdivision (h) specifically states that the changes increasing credits were to apply prospectively only.  In *Ellis*, we concluded that the intent of the Legislature "was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011."  (*Ellis, supra,* 207 Cal.App.4th at pp. 1552-1553.)  It is undisputed that Bustamante's offenses were committed well before this date.

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally."  (*People v. Brown* (2012) 54 Cal.4th 314, 328.)  Contrary to Bustamante's contention, the

11.

amendments to section 4019 operative October 1, 2011, do not treat similarly situated groups in a disparate manner. (*Ellis, supra,* 207 Cal.App.4th at pp. 1551-1552.)

The amendments to section 4019 address "'*future conduct* in a custodial setting by providing increased incentives for good behavior.'" (*Ellis, supra,* 207 Cal.App.4th at p. 1551.) Prisoners serving time before and after the effective date of a statute affecting conduct credits are not similarly situated for purposes of equal protection analysis. (*People v. Brown, supra,* 54 Cal.4th at pp. 329-330, disapproving *In re Kapperman* (1974) 11 Cal.3d 542.) The correctional purpose of a statute that rewards behavior is not served by rewarding prisoners who served time in custody prior to the effective date of the incentives because they could not have modified their behavior in response to the incentives. (*People v. Brown, supra,* at p. 329.)

Bustamante's offenses were committed well before the effective date of the amendment.[2] Based upon our determination in *Ellis* that those committing crimes prior to October 1, 2011, are not similarly situated to those committing crimes on and after October 1, 2011, for purposes of equal protection analysis pertaining to conduct credits, we reject Bustamante's contentions.

## DISPOSITION

The count 2 conviction is reversed. In all other respects, the judgment is affirmed. The superior court shall prepare an amended abstract of judgment and forward the same to the appropriate authorities.

---

[2]  His sentencing also occurred before the effective date for purposes of application of section 1170, subdivision (h). (*Ellis, supra,* 207 Cal.App.4th at p. 1553.)

_____
Franson, J.

WE CONCUR:


_____
Poochigian, Acting P.J.


_____
Detjen, J.