Filed 5/29/13  P. v. Rice CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055973 |
| v. | (Super.Ct.No. FVI1002670) |
| JOSEPH RAY RICE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed in part; reversed in part with directions.

Patricia M. Ihara, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant, Joseph Ray Rice (defendant), guilty as charged of first degree murder (Pen. Code § 187, subd. (a); count 1),[1] possession of a firearm by a felon (§ 12021, subd. (a)(1); count 2), and street terrorism (§ 186.22, subd. (a); count 3). The jury also found true the gang (§ 186.22, subd. (b)(1)) and firearm use (§§ 12022.5, subd. (a), 12022.53, subds. (b)-(d)) enhancements alleged in connection with the murder charge alleged in count 1, and the gang enhancement alleged in connection with the felon in possession of a firearm charge alleged in count 2. Defendant admitted the allegations that he had previously been convicted of a serious or violent felony within the meaning of the three strikes law (§ 667, subds. (b)-(i)), (2)), and a serious felony (§ 667, subd. (a)(1)), and that he had served a prior prison term (§ 667.5, subd. (b)). The trial court sentenced defendant to serve a determinate term of 15 years to life in state prison, followed by an indeterminate term of 75 years to life.[2]

---

[1] All further statutory references are to the Penal Code unless indicated otherwise.

[2] Defendant contends the abstract of judgment and clerk's minute order incorrectly describe his sentence as being a term of 90 years to life. Although we do not share defendant's characterization of the error, we will not address the issue because our resolution of this appeal will require the trial court to prepare an amended abstract of judgment in this case.

Defendant raises three claims of error in this appeal. First, he contends the evidence is insufficient to support the street terrorism charge and the gang enhancements because the prosecutor failed to present evidence to prove an element of both the crime and the enhancement, namely the gang's primary criminal activities. Second, defendant contends he was denied the effective assistance of counsel at trial. Finally, defendant contends, and the Attorney General concedes, that the trial court improperly imposed sentence enhancements under sections 667 and 667.5 for the same offense.

We agree with defendant's first claim of error and, therefore, will reverse his street terrorism conviction as alleged in count 3, and will strike the gang enhancements alleged in connection with counts 1 and 2. We further conclude that the Attorney General has appropriately conceded the trial court incorrectly stayed the one-year prior prison term enhancement; it should have stricken that enhancement.

## FACTS

The facts are undisputed. Around midnight on November 19, 2010, defendant was outside in the patio area of a nightclub in Victorville. A security camera videotape showed defendant looking in the direction of Delvon Williams. After about five minutes, defendant looked as if he was angry. He walked over to Williams, extended his hand up to Williams's head, and fired a single shot. Williams fell backward. Security videotape showed that defendant immediately left the nightclub. Williams died as a result of the gunshot.

By the time he was arrested in March 2011, in Lynwood California, defendant had altered his appearance by shaving his head. In the nightclub videotape, defendant had long hair, pulled into a ponytail. When interviewed in connection with his arrest, defendant acknowledged he had been an East Side Inland Empire (I.E.) Gangster Crip since he was 13 years old. Defendant also said he did not know Williams but that his friend and Williams had gotten into an argument during which Williams said he was a "Piru" or "Blood," and he would handle his business. Defendant thought to himself, "fuck that," after which he walked over and shot Williams in the head.

**DISCUSSION**

**1.**

**SUFFICIENCY OF THE EVIDENCE**

Defendant contends, as previously noted, that the evidence was insufficient to prove that the East Side I.E. Gangster Crips is a criminal street gang. A criminal street gang is defined in section 186.22, subdivision (f), as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." Defendant contends that the prosecutor failed to present evidence to prove that one of the primary activities of the East Side I.E. Gangster Crips is the commission of one or more of the enumerated crimes. We agree.

4

## A. Standard of Review

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

## B. Analysis

"The phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations. (See Webster's Internat. Dict. (2d ed. 1942) p. 1963 [defining 'primary'].) That definition would necessarily exclude the occasional commission of those crimes by the group's members." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.) "Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute. Also sufficient might be expert testimony, as occurred in [*People v.*] *Gardeley* [(1997)] 14 Cal.4th 605. There, a police gang expert testified that the gang of which defendant Gardeley had for nine years been a member was primarily engaged in the sale of narcotics and witness intimidation, both statutorily

enumerated felonies. (See § 186.22, subd. (e)(4) & (8).) The gang expert based his opinion on conversations he had with Gardeley and fellow gang members, and on 'his personal investigations of hundreds of crimes committed by gang members,' together with information from colleagues in his own police department and other law enforcement agencies. [Citation.]" (*Id.* at p. 324.)

In this case, the evidence the prosecutor presented to prove the elements of the section 186.22, subdivision (a), street terrorism substantive crime, and the sentence enhancements under subdivision (b)(1) of that section consists of the testimony of San Bernardino City Police Officer Nick Oldendorf, a gang expert. Among other things, the prosecutor asked Officer Oldendorf whether the East Side I.E. Gangster Crips have a primary purpose, and the officer responded, "A gang is defined as three or more people with a common sign or symbol that collectively or individually engage in a pattern of criminal activity under Penal Code Section 186.22. Under 186.22 there are certain crimes that are listed. Among those are aggravated assaults, robberies, shootings, narcotics trade, grand theft auto, numerous violent crimes that we have to prove are a pattern of a certain gang's criminal activity. [¶] Some of the more recent arrests have been for cocaine for sales, Penal Code Section 11351.5; PCP for sales. I believe it's Penal Code Section 11351; the shooting at occupied dwellings, Penal Code Section 246.3; possession of weapons [*sic*] by convicted felons, Penal Code Section 12021(a); PC 187, murder. Some of those have been the most recent activity that members of East Side I.E. have been located, prosecuted, arrested and convicted of."

6

In addition to testifying that defendant was a member of the East Side I.E. Gangster Crips, and that defendant had previously been convicted of attempted robbery, Officer Oldendorf also testified that Theophilius Cobbs and Matthew Manning were members of the East Side I.E. Gangster Crips, and both had been involved in shooting at an inhabited dwelling. In June 2009, Manning was convicted of that crime, and Cobbs was convicted of being a felon in possession of a firearm. Officer Oldendorf also identified Bryson Herbey as a member of the East Side I.E. Gangster Crips, who had been convicted in June 2006 of possessing cocaine base for sale in violation of section 11351.5. In addition, Officer Oldendorf identified Daveon Keel as a member of the East Side I.E. Gangster Crips, who had been convicted of murder in July 2005.

The testimony quoted above shows, although the prosecutor asked the right question, i.e., what is the primary purpose of the East Side I.E. Gangster Crips, Officer Oldendorf did not answer that question. Instead, he purported to recite the statutory definition of a criminal street gang, but his definition was incomplete because it left out the primary activities element. Officer Oldendorf's recitation of "some of the more recent arrests" of the East Side I.E. Gangster Crips did not include any details about the crimes, such as when, where, and by whom the crime was committed, or any explanation about how he acquired his information. As a result, that testimony lacked an adequate foundation. "'The requirements for expert testimony are that it relate to a subject sufficiently beyond common experience as to assist the trier of fact and *be based on matter that is reasonably relied upon by an expert in forming an opinion on the subject to which his or her testimony relates.* [Citations.]' [Citation.]" (*In re Alexander L.* (2007)

7

149 Cal.App.4th 605, 612.) More importantly, by saying that "[s]ome of those" crimes were the most recent activity of the East Side I.E. Gangster Crips, Officer Oldendorf left the jury to speculate about which crimes the gang's members had actually committed.

In order to prove the primary activity element, it is not enough to show that members of a purported criminal street gang commit various crimes. The primary activities element requires proof that members have consistently and repeatedly committed one or more of the statutorily enumerated crimes so that the jury then is able to draw the logical inference that commission of that crime, or those crimes, is the primary or chief occupation, or activity, of the group.

Officer Oldendorf's only other testimony, although sufficient to prove the required pattern of gang activity,[3] does not establish the primary activity element. That testimony shows that between 2005 and 2009, East Side I.E. Gangster Crip members committed various crimes. That testimony does not show that gang members have consistently and repeatedly engaged in the particular criminal activity listed in the statute. Even if we consider the charges pending against defendant in this case, the evidence shows that once in 2009 and again in 2010 members of the East Side I.E. Gangster Crips committed the crime of being a felon in possession of a firearm, and once in 2005 and again in 2010 members committed the crime of murder. That evidence is insufficient to show the

---

[3] Section 186.22, subdivision (j), states, "A pattern of gang activity may be shown by the commission of one or more of the offenses enumerated in paragraphs (26) to (30), inclusive, of subdivision (e), and the commission of one or more of the offenses enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e). A pattern of gang activity cannot be established solely by proof of commission of offenses enumerated in paragraphs (26) to (30), inclusive, of subdivision (e), alone."

requisite consistent and repeated commission of a crime or crimes listed in section 186.22, subdivision (e), and therefore does not establish the primary activities of the criminal street gang element in section 186.22, subdivision (f).

Apart from the testimony previously recited, Officer Oldendorf testified in the context of describing the territory of the East Side I.E. Gangster Crips, that "[d]owntown [San Bernardino] was a hotbed for East Side I.E. The downtown drug trade and drug market was a lucrative business, so a lot of them would congregate downtown to the local motels, and they have been arrested downtown in that area." The Attorney General contends the quoted testimony is sufficient to support the inference that East Side I.E. Gangster Crips repeatedly and continuously engaged in the crime of selling narcotics. We do not share that view.

The noted testimony that members congregated downtown because the drug trade was lucrative arguably supports a reasonable inference that members of the East Side I.E. Gangster Crips have engaged in the sale of narcotics. However, that testimony does not include any details and, therefore, does not establish the frequency with which members engaged in that criminal activity. The additional fact that members have been arrested in the area of downtown does not aid the analysis because that fact not only fails to establish the frequency of such arrests, but also does not specify the crimes for which members were arrested. In other words, this testimony does not support a reasonable inference that the East Side I.E. Gangster Crips repeatedly and consistently engaged in the sale of controlled substances, a crime listed in section 186.22, subdivision (e)(4), such that the

9

jury, in turn, could infer that the commission of that crime is one of the primary activities of that group.

In summary, we conclude the evidence is insufficient to show that one of the primary activities of the East Side I.E. Gangster Crips is the commission of one of the statutorily enumerated crimes. That conclusion, in turn, requires us to conclude the prosecutor failed to prove that the East Side I.E. Gangster Crips is a criminal street gang within the meaning of section 186.22, subdivision (f). Because the prosecutor failed to prove that the East Side I.E. Gangster Crips is a criminal street gang, we will reverse defendant's conviction on count 3, the charge that defendant engaged in street terrorism in violation of section 186.22, subdivision (a). We will also strike the jury's true findings on the so-called gang enhancements under section 186.22, subdivision (b)(1), alleged in connection with count 1 and count 2.

**2.**

**INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM**

Defendant contends he was denied the effective assistance of counsel at trial because his attorney (1) failed to object under Evidence Code section 352 that the probative value of defendant's prior robbery conviction in establishing the pattern of criminal gang activity, was outweighed by its potential for undue prejudice; (2) failed to object to various documents, including probation reports, introduced into evidence as part of the evidence offered to prove defendant, Cobbs, Manning, Herbey, and Keel had committed crimes while members of the East Side I.E. Gangster Crips; (3) failed to assert

10

a hearsay objection to the gang expert testimony of Officer Oldendorf; and (4) failed to request a limiting instruction on the gang evidence.

## A. Standard of Review

In order to establish a claim of ineffective assistance of counsel, defendant must "demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome. [Citations.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541, citing, among other cases, *Strickland v. Washington* (1984) 466 U.S. 668.)

## B. Analysis

Defendant's ineffective assistance of counsel claims all relate to the street terrorism charge and gang enhancements. Because we are reversing that conviction and those true findings, his claims arguably are irrelevant. However, defendant contends that his attorney's purported oversights were prejudicial because the jury could have considered the evidence, all of which suggested defendant was a person of bad character, in finding the murder was premeditated and deliberate. We disagree.

We will not address the performance component of defendant's ineffective assistance of counsel claim—although "a mere failure to object to evidence or argument seldom establishes counsel's incompetence" (*People v. Ghent* (1987) 43 Cal.3d 739, 772)—because it is easier to dispose of defendant's claim on the ground of lack of

11

sufficient prejudice.  (See *Strickland v. Washington*, *supra*, 466 U.S. at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"].)

Defendant concedes, as he must, that there was no issue in this case regarding the identity of the person who shot and killed Williams.  As defendant puts it, "this was not a 'who-done-it' [*sic*]."  He contends the issue before the jury concerned whether the murder was committed for the benefit of a criminal street gang, and whether it was premeditated.  The first issue is irrelevant for reasons previously discussed.  But defendant has not demonstrated anything more than speculation regarding the second issue.

Defendant contends the evidence of premeditation and deliberation was weak.  We do not share that view.  As the trial court instructed the jury in this case, deliberation requires proof defendant "carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill.  The defendant acted with *premeditation* if he decided to kill before completing the act that caused death.  [¶]  The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated.  The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances.  A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated.  On the other hand, a cold, calculated decision to kill can be reached quickly.  The test is the extent of reflection, not the length of time."

12

In this case, the security videotape and defendant's statement to the police demonstrate that defendant considered whether to shoot Williams before he actually walked over and pulled the trigger. More particularly, the evidence of premeditation and deliberation consists of defendant's statement that after Williams and defendant's friend got into an argument, defendant thought "fuck that" to himself, and then walked over and shot Williams in the head. Defendant does not cite this evidence, least of all discuss its significance. Instead, he speculates that the jury based its finding that defendant acted with premeditation and deliberation on the purportedly inadmissible evidence of defendant's bad character. Defendant simply has not demonstrated the prejudice requirement of his ineffective assistance of counsel claim. In short, we conclude it is not reasonably probable, assuming the challenged evidence was inadmissible and, therefore, not introduced at trial, that the jury would have reached a result more favorable to defendant on the murder charge.

## DISPOSITION

The judgment is modified as follows:

Defendant's conviction on count 3, the crime of street terrorism in violation of section 186.22, subdivision (a), is reversed with directions to dismiss that charge based on insufficiency of the evidence.

The sentence enhancements imposed under section 186.22, subdivision (b)(1), on the first degree murder conviction in count 1 and the conviction for being a felon in possession of a firearm in count 2 are stricken.

13

The one-year prior prison term enhancement imposed under section 667.5, subdivision (b), is stricken.

Except as modified, the judgment is affirmed.

The trial court is directed to prepare an amended abstract of judgment that accurately reflects defendant's sentence as modified and forward a copy of that amended abstract to the appropriate agencies and entities.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                    J.

We concur:


RAMIREZ
            P. J.


CODRINGTON
            J.