Filed 6/27/13  P. v. Abad CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046685 |
| v. | (Super. Ct. No. 09CF2817) |
| IVAN DECTOR ABAD, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed in part and reversed in part.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Ivan Dector Abad shot twice at Erick Paz, but did not hit him. Defendant was convicted of two counts of attempted murder, two counts of assault with a firearm, and one count of street terrorism. The jury also found true several sentencing enhancements, including gang sentencing enhancements. Defendant challenges his conviction and sentence. We reverse defendant's conviction for street terrorism, but otherwise affirm.

First, we conclude that under the California Supreme Court's recent decision in *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1132, defendant's conviction for street terrorism must be reversed because defendant was acting alone when attempting to shoot Paz.

Second, we conclude substantial evidence supports the gang sentencing enhancements. The gang expert provided sufficient evidence that the Orange Varrio Cypress (OVC) gang's primary activities included crimes specified in Penal Code section 186.22, subdivision (e).

Third, and finally, we conclude Penal Code section 654 does not require that execution of the sentence be stayed on one of the attempted murder counts. Substantial evidence supports the trial court's finding that defendant had separate objectives and intents when firing two shots in rapid succession at Paz.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

About 5:50 p.m. on November 12, 2009, Paz saw his brother's friends standing in front of his apartment. Paz is not a member of a gang, but his brother and his brother's friends are members of the OCC gang. Paz saw five Latino males approach his brother's friends, saying, "OVC." Paz's brother's friends replied, "OCC." A fight broke out, and OVC gang member Ruben Losada was hit over the head and stabbed three times.

2

About an hour later, Paz was standing in front of his apartment; he saw defendant approaching him. Defendant stopped about two feet in front of Paz and asked what gang he was from. Paz responded he was not from any gang. Defendant stated, "OVC," and then walked about 30 feet away from Paz. Defendant then turned, looked at Paz, put his hand in his sweater, and pulled out a gun. Paz went between two parked vehicles to protect himself, saw defendant point a gun at him, and heard a gunshot. The shot hit the back of one of the vehicles that Paz was hiding behind. Defendant, who was standing on the sidewalk, moved to his right, as if to try to get a better angle to shoot at Paz. Paz saw defendant point the gun and fire at him again. Paz testified that four or five seconds passed between the two shots. Defendant ran between two apartment buildings, and Paz called the police.

Two witnesses to the shooting, who were driving by in a minivan, saw a Hispanic male, later identified as defendant, holding a pistol while another man hid behind some cars. The witnesses continued driving. They heard two gunshots in quick succession, like they were "[s]imultaneous."

Shell casings were found a few feet apart in a grassy area. Given the locations of the casings, the shots were fired from the same general area.

About 7:00 p.m. on November 12, a male matching defendant's description was seen running through a Home Depot store close to the scene of the shooting. A gun located along the fence line behind the Home Depot was identified as the gun used in the attempted shooting of Paz. Defendant's DNA was identified on clothing found discarded in the Home Depot men's restroom.

Defendant was charged in an amended information with two counts of attempted premeditated and deliberate murder (Pen. Code, §§ 187, subd. (a), 664, subd. (a)), two counts of assault with a semiautomatic firearm (*id.*, § 245, subd. (b)), and one count of street terrorism (*id.*, § 186.22, subd. (a)). The information alleged that, with respect to the attempted murder counts, defendant personally discharged a firearm in

3

violation of Penal Code section 12022.53, subdivision (c), and, with respect to the assault counts, defendant personally used a firearm in violation of Penal Code section 12022.5, subdivision (a). As to the attempted murder and assault counts, the information alleged defendant committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang. (*Id.*, § 186.22, subd. (b).) A jury convicted defendant of all counts, and found all sentencing enhancement allegations to be true.

The trial court sentenced defendant to a total term of 20 years plus life, with a minimum parole term of 15 years. Defendant was sentenced to indeterminate terms of life on both attempted murder counts, which were ordered to be served concurrently, and to a determinate term of 20 years for the Penal Code section 12022.53, subdivision (c) sentencing enhancement. Execution of the sentences on the assault and street terrorism counts and attendant enhancements was stayed, pursuant to Penal Code section 654. Defendant timely appealed.

DISCUSSION

I.

*DEFENDANT'S CONVICTION FOR STREET TERRORISM MUST BE REVERSED.*

To be convicted of street terrorism under Penal Code section 186.22, subdivision (a), a defendant must actively participate in a criminal street gang, have knowledge of the gang's pattern of criminal activity, and willfully commit an act that "promotes, furthers, or assists in any felonious criminal conduct by members of that gang." (Pen. Code, § 186.22, subd. (a).) In *People v. Rodriguez*, *supra*, 55 Cal.4th at page 1132, the California Supreme Court held: "The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." In the present case, the Attorney General concedes that because defendant acted alone in shooting at Paz, there is

4

insufficient evidence to support his conviction for street terrorism. We therefore reverse the street terrorism conviction.

## II.

### SUFFICIENCY OF THE EVIDENCE OF PRIMARY ACTIVITIES

Defendant argues there was insufficient evidence of the gang's primary activities to support the gang sentencing enhancements under Penal Code section 186.22, subdivision (b).[1] "In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.) The same standard applies to challenges to the sufficiency of the evidence supporting gang enhancement findings. (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 321-322.)

A true finding on a Penal Code section 186.22, subdivision (b)(1), gang sentencing enhancement requires proof of the existence of a criminal street gang. Three elements must be proven to establish the existence of a criminal street gang: (1) the existence of an ongoing association involving three or more participants having a common name or common identifying symbol; (2) that the group has as one of its primary activities the commission of one or more specified crimes; and (3) that the group's members, separately or collectively, have engaged in a pattern of criminal gang

---

[1] Defendant also argues on appeal the evidence of the gang's primary activities was insufficient to support the street terrorism charge. As explained *ante*, the street terrorism conviction must be reversed for another reason.

activity. (Pen. Code, § 186.22, subd. (f); *People v. Vy* (2004) 122 Cal.App.4th 1209, 1222.) Defendant challenges only the second element.

In this case, the evidence of the gang's alleged primary activities was provided through the testimony of Detective Miguel Cuenca, the prosecution's gang expert. Cuenca testified he had investigated crimes committed by or against OVC gang members; spoken to OVC gang members, witnesses, and victims of crimes committed by OVC gang members, members of rival gangs, and other detectives and police officers, all regarding the OVC gang and its activities; reviewed police reports, California Street Terrorism Enforcement and Prevention Act (Pen. Code, § 186.20 et seq.) notices, and field investigation cards for OVC gang members and OVC crimes; and reviewed certified court documents regarding the criminal convictions of OVC gang members. Cuenca testified the OVC gang's primary activities include assault with a deadly weapon, possession of narcotics (particularly methamphetamine and marijuana) for sale, and illegal firearm possession. Cuenca also testified about two specific crimes committed by OVC gang members in order to establish the third element—the pattern of criminal gang activity.

Defendant contends Cuenca's testimony was insufficient because he did not testify the OVC gang members engaged consistently and repeatedly in the criminal conduct. Defendant relies primarily on *In re Alexander L.* (2007) 149 Cal.App.4th 605, in which the court concluded the conclusory testimony of a gang expert as to the gang's alleged primary activities was insufficient. In that case, the gang expert's entire testimony as to the gang's primary activities was as follows: "'I know they've committed quite a few assaults with a deadly weapon, several assaults. I know they've been involved in murders. [¶] I know they've been involved with auto thefts, auto/vehicle burglaries, felony graffiti, narcotic violations.'" (*Id.* at p. 611.) Notably, in *In re Alexander L.*, a panel of this court compared the expert's testimony unfavorably to *People v. Gardeley* (1996) 14 Cal.4th 605, 620, in which the gang expert based his

opinion about the gang's primary activities "'on conversations with the defendants and with other Family Crip members, his personal investigations of hundreds of crimes committed by gang members, as well as information from his colleagues and various law enforcement agencies.'" (*In re Alexander L.*, *supra*, at p. 613.)  Here, the expert's opinion as to the OVC gang's primary activities has the same evidentiary background and support as did the expert's opinion in *People v. Gardeley*.  We therefore conclude there was sufficient evidence of the gang's primary criminal activities in this case, and affirm the true findings on the gang sentencing enhancements.

## III.

### *PENAL CODE SECTION 654*

Penal Code section 654, subdivision (a) provides, in relevant part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"It is well settled that [Penal Code] section 654 protects against multiple punishment, not multiple conviction.  [Citation.]  The statute itself literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission.'  [Citation.]  However, because the statute is intended to ensure that defendant is punished 'commensurate with his culpability' [citation], its protection has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.'  [Citation.]  [¶] It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible.  [Citations.]  We have traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may

7

be punished only once.  [Citation.]  [¶] If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'  [Citation.]"  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)[2]

Defendant argues he had a single intent and objective in the commission of the attempted murder counts—to kill Paz.  Therefore, defendant argues, execution of the sentence on one of the counts of attempted murder should have been stayed.

The Attorney General argues that defendant had a separate intent and objective when firing the two shots at Paz.  She relies on *People v. Trotter* (1992) 7 Cal.App.4th 363 to support her argument.  In that case, the defendant fled the scene of a crime in a commandeered taxicab.  (*Id.* at pp. 365-366.)  The defendant fired a gun, through the back window of the cab, at the pursuing police.  (*Id.* at p. 366.)  The defendant continued driving, and, about one minute later, fired a second shot; he fired a third shot seconds later.  (*Ibid.*)  The defendant was convicted of three counts of assault on a police officer.  (*Id.* at p. 365.)  The trial court sentenced the defendant on two of the counts, but execution of the sentence on the third count was stayed under Penal Code section 654.  (*People v. Trotter*, *supra*, at p. 365.)

The appellate court affirmed.  "Defendant's conduct became more egregious with each successive shot.  Each shot posed a separate and distinct risk to [the police officer] and nearby freeway drivers.  To find section 654 applicable to these facts

---

[2]  In *People v. Correa* (2012) 54 Cal.4th 331, 334, the California Supreme Court held that Penal Code section 654 does not bar multiple punishment for multiple violations of the same criminal statute.  The court specified that its holding would apply prospectively only.  (*People v. Correa*, *supra*, at pp. 344-345.)  Because the crimes at issue in this case occurred before the opinion in *People v. Correa* was filed, defendant and the Attorney General agree that it is inapplicable here.

8

would violate the very purpose for the statute's existence. [¶] Furthermore, this was not a case where only one volitional act gave rise to multiple offenses. Each shot required a separate trigger pull. All three assaults were volitional and calculated, and were separated by periods of time during which reflection was possible. None was spontaneous or uncontrollable. '[D]efendant should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his . . . assaultive behavior.' [Citation.] [¶] Defendant, as he was driving, turned back, pointed, and shot his weapon. He resumed driving, paused for about a minute, turned back, and shot again. After another few seconds a third shot was fired. There was thus time prior to each shot for defendant to reflect and consider his next action. As the court remarked at sentencing, '[t]hey were separate acts of violence on different occasions coming down the freeway and putting different people—putting different officers in danger.' [¶] Section 654 is applicable when there is a single 'act.' But here, there were three separate acts, not one 'made punishable in different ways by different provisions of [the Penal Code] . . . .' [Citations.] [¶] But, even under the long recognized 'intent and objective' test, each shot evinced a separate intent to do violence just as each new and separate penetration in [*People v.*] *Harrison*[, *supra*, 48 Cal.3d 321,] evinced a new and separate intent and objective. It is not the 'nature' of the offenses which governs the applicability of section 654. If this were so, a defendant could be separately punished when the means used to perpetrate an assault were varied, but could not be separately punished if the means remained the same. This would lead to absurd results, and is an approach which *Harrison* condemns. [Citation.] Accordingly, the court here did not err in punishing defendant separately for two of the three assaults." (*People v. Trotter*, *supra*, 7 Cal.App.4th at p. 368, fn. omitted.)

Here, the longest possible time between defendant's two shots was five seconds. (Paz testified the shots were four or five seconds apart.) The witnesses who were driving by the scene testified the shots were "[s]imultaneous . . . [t]hat fast . . .

9

[q]uick . . . [¶] . . . [¶] [o]ne [shot] after another," or in very rapid succession. However, Paz testified that after firing the first shot, defendant "made a movement like trying to get an angle to shoot at me again." Paz later reiterated that defendant did not simply fire two shots in rapid succession, but actually moved in order to get a better angle from which to shoot at Paz.

"Q And when you said that before he—when the—when he shot the second time, you said that he moved a little bit or moved to get a better angle. What did this person do?

"A Yes. He moved to his right side where there's some grass.

"Q And when he fired the first shot, was he on the sidewalk or on the grass area?

"A On the sidewalk.

"Q So when he fired the first shot, he was on the sidewalk, and before he took the second shot, he moved over to the grass area?

"A Yes."

If there was time for defendant to change his physical position and re-aim his gun at Paz, there was sufficient time between the two shots for defendant to reflect and reconsider. Defendant's act of physically repositioning himself before firing the second shot supports a finding that the two shots were separate and independent acts, even though they were parts of an otherwise indivisible course of conduct. Therefore, there is sufficient evidence to support a finding that defendant had multiple intents and objectives when firing the two shots at Paz. The trial court did not err in failing to stay execution of the sentence on one of the attempted murder counts.

DISPOSITION

Defendant's conviction for street terrorism is reversed.  In all other respects, the judgment is affirmed.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

11