[No. F012408. Fifth Dist. Aug. 28, 1990.]

In re LELAND D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
LELAND D., Defendant and Appellant.

**COUNSEL**

Scott D. Kalkin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Edgar A. Kerry and Margaret Garnand Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REID, J.*—**

### INTRODUCTION

On June 22, 1989, appellant was adjudged a ward of the juvenile court of Fresno County and on July 7, 1989, was committed to the California Youth Authority for a maximum term of seven years and one month. The adjudication and commitment were based upon finding true the allegations of an original petition and a first amended petition that appellant was a person under the age of 18 years who came within the provisions of section 602 of the Welfare and Institutions Code. The particular allegations found true were that appellant had committed the following law violations:

*Original Petition*:

Count 1: violation of Penal Code section 243, subdivision (b) (battery against a peace officer); and

Count 2: violation of Welfare and Institutions Code section 871 (escape from juvenile hall).

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

*First Amended Petition*:

Count 1: violation of Health and Safety Code section 11352 (sale of cocaine);

Count 2: violation of Penal Code section 148 (resisting arrest);

Count 3: violation of Penal Code section 148.9 (giving false information to a peace officer);

Count 4: violation of Penal Code section 186.22, subdivision (a) (knowing participation in a criminal street gang); and

Count 5: violation of Penal Code section 186.22, subdivision (b) (commission of a criminal offense for the benefit of a criminal street gang).

Of the seven allegations accusing appellant of criminal acts, one was found true by admission (violation of Welf. & Inst. Code, § 871) and the remaining six were found true as a result of a contested jurisdictional hearing. As to four of these six contested charges, appellant appears to concede that the findings of the juvenile court against him are supported by the evidence and the law. As a consequence, he makes no argument against such findings on appeal. He does, however, strongly challenge the juvenile court's findings that the allegations of counts 4 and 5 of the first amended petition charging him with violations of Penal Code section 186.22, subdivisions (a) and (b), are true. For the reasons discussed hereinafter, we find merit to appellant's arguments and reverse the judgment based on such findings.

## THE FACTS

On May 5, 1989, while working undercover in the area of Modoc and O'Neill Streets in Fresno, Officer Paul Hougard of the Fresno Police Department purchased rock cocaine from appellant. Hougard and another officer drove into the Modoc/O'Neill area in an unmarked car searching to buy narcotics. The area is known to be a heavy narcotic trafficking area.

At the corner of O'Neill and Modoc, the officers saw a group of young Black males standing in a carport area of a nearby apartment complex. The young men ranged in age from 15 years to the "early 20's." As the officers approached the area, the young men yelled, "Stop! Stop!" and approached the car from both sides, displaying in their hands what appeared to be rock cocaine and offering the cocaine to the officers for sale. Hougard recognized appellant, with whom he had had previous contact on at least three occa-

sions. Hougard purchased two small pieces of rock cocaine from appellant for a price of $20.

Officer Tello also purchased rock cocaine from one of the individuals. After the purchases were completed, the entire group walked back to the carport area. Hougard reported his purchase and identified appellant by name as the individual who sold him the cocaine. Hougard testified appellant was wearing white Levis at the time of the sale.

Appellant was arrested on May 8, 1989. At the time of his arrest, appellant was wearing a black baseball cap with a blue insignia, black pants, black sneakers with a blue insignia and a blue T-shirt. A blue bandanna hung from his rear pants pocket.

At the adjudication hearing, Officer Dwayne Freeman of the Fresno Police Department youth gang task force was qualified as an expert on criminal street gang activity. Freeman testified a street gang named "Fink White Deuces" frequents the area of Modoc and O'Neill and the nearby Fink-White playground. Freeman testified the Fink White Deuces are a subset of the Crips gang. The Crips hail from Los Angeles, and the gang's primary purpose is to engage in criminal activity.

According to Freeman, the Fink White Deuces are also actively engaged in the narcotics trade because gang members seek the success and power which come from the resulting profit. Gang members generally do not attend school and are out of the control of their parents. Their ages range from 12 to 18 years and they wear, as a subset of the Crips, predominantly blue colors. They do not wear red because red is the color of a rival gang, the "Bloods." Gang members often have nicknames or "monikers," and the gang's turf is "decorated" with graffiti displaying the gang's name and the monikers of its members. Gang members tend to share their illicit profit with other members and have strong loyalties to one another.

Freeman also testified he had various face-to-face "contacts" with appellant during Freeman's work with the Black street gangs. Freeman testified that during a contact with appellant in October 1988, appellant admitted he was a member of the Fink White Deuces. Appellant's nickname is "Nene."

Appellant did not testify at trial. He did, however, call several friends and relatives who testified appellant was not a member of the Fink White Deuces nor did he associate with known gang members. The defense witnesses also stated appellant did not wear only blue and did on occasion wear red. The defense presented evidence which appellant argued established

Hougard had mistakenly identified appellant as the individual who sold the cocaine.[1]

Appellant established he had relatives living in the Modoc/O'Neill area whom he visited frequently. Appellant's mother testified he was given the nickname "Nene" by his father when he was a little boy and that appellant did not own a pair of white pants.

## DISCUSSION

Appellant challenges the sufficiency of the evidence to support his convictions under the relatively new gang activity statute, known as the California Street Terrorism Enforcement and Prevention Act. (Pen. Code, § 186.20.)[2]

The statute was enacted in response to what the Legislature identified as a "state of crisis" caused by violent street gangs "whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods." (§ 186.21.) The statute provides in pertinent part as follows:

"The Legislature hereby finds and declares that it is the right of every person . . . to be secure and protected from fear, intimidation, and physical harm caused by the activities of violent groups and individuals. It is not the intent of this chapter to interfere with the exercise of the constitutionally protected rights of freedom of expression and association. . . .

"The Legislature, however, further finds that the State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to public order and safety and are not constitutionally protected. . . . It is the intent of the Legislature in enacting this chapter to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs. . . ." (§ 186.21.)

"(a) Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished

---

[1] Hougard broadcast both appellant's name and clothing description after the sale. Responding officers detained appellant's cousin, Kelvin D., believing him to be the suspect. Hougard, however, remained certain it was appellant and not Kelvin who sold the cocaine.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

by imprisonment in the county jail for a period not to exceed one year, or by imprisonment in the state prison for one, two, or three years.

"(b)(1) Except as provided in paragraph (2), any person who is convicted of a felony which is committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or three years at the court's discretion. . . .

". . . . . . . . . . . . . . . . . .

"(e) As used in this chapter, 'pattern of criminal gang activity' means the commission, attempted commission, or solicitation of two or more of the following offenses, provided at least one of those offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses are committed on separate occasions, or by two or more persons: [¶] (1) Assault with a deadly weapon or by means of force likely to produce great bodily injury, as defined in Section 245. [¶] (2) Robbery, as defined in Chapter 4 (commencing with Section 211) of Title 8 of Part 1. [¶] (3) Unlawful homicide or manslaughter, as defined in Chapter 1 (commencing with Section 187) of Title 8 of Part 1. [¶] (4) The sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture controlled substances as defined in Sections 11054, 11055, 11056, 11057, and 11058 of the Health and Safety Code. [¶] (5) Shooting at an inhabited dwelling or occupied motor vehicle, as defined in Section 246. [¶] (6) Arson, as defined in Chapter 1 (commencing with Section 450) of Title 13. [¶] (7) The intimidation of witnesses and victims, as defined in Section 136.1. [¶] (8) Grand theft of any vehicle, trailer, or vessel as described in Section 487h.

"(f) As used in this chapter, 'criminal street gang' means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (8), inclusive, of subdivision (e), which has a common name or common identifying sign or symbol, whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity. [¶] . . . (§ 186.22.)

■ When an appellant attacks the sufficiency of the evidence to support a conviction, this court must examine the entire record in the light most favorable to the judgment below and presume in support of the judgment the existence of every fact that can reasonably be deduced from the evidence. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. (*In re James D.* (1981) 116 Cal.App.3d 810, 813 [172 Cal.Rptr. 321].) If the circumstances reasonably justify the findings of the trier of fact as to each element of the offense, an opinion of the reviewing court that the circumstances might also lead to a contrary finding does not warrant reversal. (*In re Charles G.* (1979) 95 Cal.App.3d 62, 67 [156 Cal.Rptr. 832].) ■ "We must make all reasonable inferences to support the findings of the juvenile court and we must review the record in the light most favorable to the juvenile court order." (*Ibid.*)

■ Applying these principles, we must now determine whether there is substantial evidence, contradicted or uncontradicted, that will support each element of the crime charged, specifically appellant's convictions under the criminal street gang statute. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal.Rptr. 637, 623 P.2d 198].)

Our review of the record leads us to conclude there is insufficient evidence to sustain an essential element of the offense charged, i.e., that the Fink White Deuces are a criminal street gang engaged in a "pattern of criminal activity." For this reason the judgment must be reversed.

The statute explicitly defines a criminal street gang as one whose members engage in a pattern of criminal activity, i.e., have committed, attempted or solicited two or more of the enumerated offenses within the identified timeframe. (§ 186.22, subds. (e) and (f).) Engaging in a pattern of criminal activity as that term is defined by the statute is thus an element of the offense which must be established in order to sustain a conviction. (§ 186.22, subd. (a).)

The record does not contain one piece of evidence establishing that any member of the Fink White Deuces has ever committed one of the enumerated offenses, with the sole exception of appellant's conviction for sale of cocaine. Although the statute does not require proof of convictions, it does require proof that the offenses were committed. Evidence that an individual has been arrested for an offense, without more, is not sufficient to establish either that a crime has been committed or that any particular individual is guilty of its commission.

In the present instance, Freeman testified that members of the Fink White Deuces have engaged in the sale of rock cocaine, have committed vehicle thefts and have been involved in assaults with deadly weapons. Exactly who, when, where and under what circumstances are not specified. The sources of such conclusional pronouncements appear to have been hearsay statements from unidentified gang members and information pertaining to arrests of purported gang members all made without a definite timeframe being established. When pressed for specific information, the best Freeman could do was the following:

"Q. . . . Has there been any serious felony committed, umm, after September 1988 involving specifically Fink White Deuces as a gang?

"A. I don't know. I'm sure there has been, but I don't know.

"Q. That's just an assumption; correct?

"(No response from witness.)

"Q. Correct?

"A. I could name one, yes, now that you mention it.

"Q. Okay. What would that be?

"A. There was a drive-by. It was in May of this year, may have been sooner. Around May of this year, happened at Modoc and O'Neill and it was gang related.

"Q. Can you be more specific? Do you know if there were alleged Fink White Deuces involved in this?

"A. There were Fink White Deuces present. There were also Fink White Deuces—it was in a Fink White Deuce neighborhood. *And it was a Blood doing the drive-by who really at the time didn't particularly care who he shot except he was shooting for Crips.*" (Italics added.)

Clearly, Officer Freeman's "expert testimony" based on nonspecific hearsay and arrest information does not constitute substantial evidence that the Fink White Deuces are a criminal street gang as defined by statute. ■ Substantial evidence is evidence which is reasonable, credible and of solid value. (*In re Angelia P., supra*, 28 Cal.App.3d 908, 924.) ■ Freeman's testimony falls far short of what is required to prove "the commission, attempted commission, or solicitation of two or more of the [statutori-

ly enumerated] offenses" (§ 186.22, subd. (e)) within the requisite three-year time period so as to establish that the Fink White Deuces "engaged in a pattern of criminal activity." Since his testimony is the only evidence that might establish the criminal nature of the gang, the evidence is insufficient as a matter of law to establish that appellant either participated in a criminal street gang or committed a crime for the benefit of such a gang.

## DISPOSITION

For the foregoing reasons we reverse the order of the juvenile court sustaining the allegations of counts 4 and 5 of the first amended petition accusing appellant of violations of section 186.22, subdivisions (a) and (b). In all other respects the findings and order of the juvenile court are affirmed. The case is remanded for dispositional action consistent with this decision.

Stone (W. A.), Acting P. J., and Ardaiz, J., concurred.