[No. G036595. Fourth Dist., Div. Three. Apr. 9, 2007.]

In re ALEXANDER L., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ALEXANDER L., Defendant and Appellant.

COUNSEL

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson and Gary W. Schons, Assistant Attorneys General, and Scott C. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

MOORE, J.—The Orange County District Attorney filed a petition under Welfare and Institutions Code section 602, alleging Alexander L. had committed three counts of vandalism. The petition further alleged the offenses were committed for the benefit of a street gang. The court found all the allegations true. Alexander L. does not challenge the underlying vandalism allegations, but argues there was insufficient evidence to support the street gang enhancement. We agree that the prosecution presented insufficient evidence of the gang's "primary activities" within the meaning of the relevant statute. We therefore reverse that portion of the court's findings and remand for a new sentencing hearing.

# I

## FACTS

In December 2005, Orange County Deputy Sheriff Craig Lang, who was working in the gang enforcement unit, contacted Alexander L. (Alexander). Lang questioned Alexander about his status in a street gang known as Varrio Viejo because he was wearing gang clothing and was in a known gang gathering area. Alexander told Lang that he knew 10 to 15 members of the gang and associated with them.

Lang advised Alexander of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602], and asked him if he had ever committed any crimes that would benefit the gang. Alexander replied that on the previous day, he had spray painted the name of the gang ("tagged") in three locations. Alexander also told Lang he had been given the moniker "Vicious." Lang drove Alexander to the three locations he had tagged, and Alexander again admitted his culpability and told Lang why he had tagged those specific areas.

The Orange County District Attorney filed a petition under Welfare and Institutions Code section 602, alleging that Alexander had committed three counts of vandalism, resulting in damage under $400. (Pen. Code, § 594, subds. (a), (b)(2)(A).)[1] The petition further alleged that all three offenses were committed for the benefit of, at the direction of, or in association with Varrio Viejo, a street gang, with the intent to promote, further, or assist the gang, within the meaning of section 186.22, subdivision (d).

At trial, on January 10, 2006, Lang testified as a gang expert, and we shall develop the facts surrounding his testimony in our discussion below. The court found the petition's allegations true beyond a reasonable doubt. The court ordered Alexander a ward of the court under Welfare and Institutions Code section 602 and committed him to a juvenile facility for 120 days as one of several probation conditions.

# II

## DISCUSSION

*Issues and Standard of Review*

Alexander argues the court erred by denying his motion to dismiss the gang enhancement filed pursuant to section 186.22, subdivision (d). He

---

[1] Unless noted, subsequent statutory references are to the Penal Code.

argues the court's finding is not supported by sufficient evidence because the prosecution failed to prove that Varrio Viejo is a criminal street gang within the meaning of section 186.22, subdivision (f). Specifically, he argues there was insufficient evidence that Varrio Viejo's primary activities consisted of committing one or more of the crimes listed in section 186.22, subdivision (e), or that its members had engaged in a pattern of criminal gang activity by committing two or more listed criminal offenses.

■ "Our role in considering an insufficiency of the evidence claim is quite limited. We do not reassess the credibility of witnesses [citation], and we review the record in the light most favorable to the judgment [citation], drawing all inferences from the evidence which supports the jury's verdict. [Citation.]" (*People v. Olguin* (1999) 31 Cal.App.4th 1355, 1382 [37 Cal.Rptr.2d 596].) The standard of review is the same where the prosecution relies primarily on circumstantial evidence. (*People v. Miller* (1990) 50 Cal.3d 954, 992 [269 Cal.Rptr. 492, 790 P.2d 1289].) Before a verdict may be set aside for insufficiency of the evidence, a party must demonstrate " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].) The same standard of review applies to section 186.22 gang enhancements. (*People v. Augborne* (2002) 104 Cal.App.4th 362, 371 [128 Cal.Rptr.2d 258].)

*The STEP Act*

■ The California Street Terrorism Enforcement and Prevention Act (STEP Act; § 186.20 et seq.) criminalizes specified acts when committed in connection with a criminal street gang. It also provides for enhanced punishment for any misdemeanor or felony committed "for the benefit of, at the direction of or in association with, any criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (d).)

A "criminal street gang" is defined under the statute as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in [section 186.22, subdivision (e)], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).) The acts set forth in subdivision (e) include murder, robbery, burglary, and other felonies, including felony vandalism.

"Therefore, the 'criminal street gang' component of a gang enhancement requires proof of three essential elements: (1) that there be an 'ongoing'

association involving three or more participants, having a 'common name or common identifying sign or symbol'; (2) that the group has as one of its 'primary activities' the commission of one or more specified crimes; and (3) the group's members either separately or as a group 'have engaged in a pattern of criminal gang activity.' [Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1222 [19 Cal.Rptr.3d 402].)

■ The first element is not at issue here. To establish the second element, the nature of the gang's primary activities, the trier of fact may look to both the past and present criminal activities of the gang. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323 [109 Cal.Rptr.2d 851, 27 P.3d 739] (*Sengpadychith*).) Isolated criminal conduct, however, is not enough. "Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute." (*Id.* at p. 324.) Expert testimony based on an adequate factual foundation might also be sufficient. (*Ibid.*)

In addition to proving the gang's primary activities consisted of the enumerated criminal acts, the prosecution must also demonstrate a pattern of criminal activity. "[A] gang otherwise meeting the statutory definition of a 'criminal street gang' . . . is considered a criminal street gang under the STEP Act only if its members 'individually or collectively engage in or have engaged in a pattern of criminal gang activity' [citation] by 'the commission, attempted commission, or solicitation of *two or more*' (italics added) of the statutorily enumerated offenses within the specified time frame [citation]." (*People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713] (*Gardeley*).) The crimes necessary to establish a pattern within the meaning of section 186.22, subdivision (f), however, need not be gang related. (*Gardeley, supra*, at pp. 621–623.)

*Evidence of the Gang's "Primary Activity"*

At trial, Lang testified as a gang expert. He testified generally about the benefits graffiti might create for a gang, such as intimidating rivals. He also stated his opinion that Varrio Viejo was an active street gang as of the date of Alexander's arrest. When asked about the primary activities of the gang, he replied: "I know they've committed quite a few assaults with a deadly weapon, several assaults. I know they've been involved in murders. [¶] I know they've been involved with auto thefts, auto/vehicle burglaries, felony graffiti, narcotic violations." No further questions were asked about the gang's primary activities on direct or redirect examination.

Lang's entire testimony on this point is quoted above—he "kn[e]w" that the gang had been involved in certain crimes. No specifics were elicited as to

the circumstances of these crimes, or where, when, or how Lang had obtained the information. He did not directly testify that criminal activities constituted Varrio Viejo's primary activities. Indeed, on cross-examination, Lang testified that the vast majority of cases connected to Varrio Viejo that he had run across were graffiti related.[2]

■ Even if we could reasonably infer that Lang meant that the primary activities of the gang were the crimes to which he referred, his testimony lacked an adequate foundation. "The requirements for expert testimony are that it relate to a subject sufficiently beyond common experience as to assist the trier of fact and *be based on matter that is reasonably relied upon by an expert in forming an opinion on the subject to which his or her testimony relates.* [Citations.]" *(People v. Olguin, supra,* 31 Cal.App.4th at p. 1371, italics added.) "Of course, any material that forms the basis of an expert's opinion testimony must be reliable. [Citation.] . . . 'Like a house built on sand, the expert's opinion is no better than the facts on which it is based.' [Citation.]" *(Gardeley, supra,* 14 Cal.4th at p. 618.)

We cannot know whether the basis of Lang's testimony on this point was reliable, because information establishing reliability was never elicited from him at trial. It is impossible to tell whether his claimed knowledge of the gang's activities might have been based on highly reliable sources, such as court records of convictions, or entirely unreliable hearsay.[3] (See *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1003 [279 Cal.Rptr. 236] ["While experts may offer opinions and the reasons for their opinions, they may not under the guise of reasons bring before the trier of fact incompetent hearsay evidence."].) Lang's conclusory testimony cannot be considered substantial evidence as to the nature of the gang's primary activities.[4]

Lang also testified about two specific crimes committed by gang members. He testified that he knew that Jorge Portillo, a Varrio Viejo member, had committed an assault with force likely to create great bodily injury in May 2004. Portillo was apparently convicted of the assault, but acquitted of the gang enhancement and gang affiliation charges. Lang stated that he knew Portillo was a gang member from his presence in known gang areas and his association with other gang members. Lang also testified that he knew of

---

[2] The surrounding testimony refers to "marks on walls" as the type of graffiti in question. Lang did not testify that these activities constituted felony vandalism involving damage over $400 (§ 594, subd. (b)(1)), which is a predicate crime under section 186.22, subdivision (e). In this case, the damage was under $400 and was alleged in the petition accordingly.

[3] Hearsay may be admitted for this purpose, but it must be deemed reliable.

[4] Indeed, defense counsel's objection to Lang's answer on the ground that it lacked foundation (as well as its nonresponsive nature) should have been sustained, and the motion to strike the testimony granted.

Estevan Torres, another Varrio Viejo member, who had been involved in an assault with a deadly weapon in August 2004.

■ The Attorney General argues that taken together, the two crimes in 2004 and Lang's testimony about the gang's crimes provide sufficient evidence of the gang's primary activities. "The phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations. [Citation.] That definition would necessarily exclude the occasional commission of those crimes by the group's members. . . . 'Though members of the Los Angeles Police Department may commit an enumerated offense while on duty, the commission of crime is not a *primary activity* of the department. Section 186.22 . . . requires that one of the primary activities of the group or association itself be the commission of [specified] crime[s]. . . .' " (*Sengpadychith, supra*, 26 Cal.4th at pp. 323–324.)

The Attorney General relies on *Gardeley, supra*, 14 Cal.4th 605. Yet in that case, a proper foundation was laid for the expert witness's testimony: "Boyd [the expert witness] also expressed his expert opinion that the primary activity of the Family Crip gang was the sale of narcotics, but that the gang also engaged in witness intimidation. (These are two of the offenses enumerated in subdivision (e) of section 186.22.) Boyd based this opinion on conversations with the defendants and with other Family Crip members, his personal investigations of hundreds of crimes committed by gang members, as well as information from his colleagues and various law enforcement agencies." (*Id.* at p. 620.) In *Gardeley*, unlike here, the court knew where the information to which the expert was testifying originated and was able to assess its reliability.

Two cases addressing the "pattern of gang activity" requirement presented expert testimony similar to that offered here. In *In re Nathaniel C., supra*, 228 Cal.App.3d 990, the prosecution presented the expert testimony of a South San Francisco police officer to prove a gang member had committed one of the predicate crimes, specifically, a shooting. The expert had learned about the shooting from San Bruno police officers. He testified the San Bruno police also believed the shooter was a gang member and that the shooting was gang related. (*Id.* at p. 998.) The court concluded the expert "offered only nonspecific hearsay of a suspected shooting of one [gang] member by another. The [expert] witness . . . had no personal knowledge of the incident and only repeated what San Bruno police told him they believed about the shooting. Such vague, secondhand testimony cannot constitute substantial evidence that the required predicate offense by a gang member occurred. [Citation.]" (*Id.* at p. 1003.)

Similarly, in *In re Leland D.* (1990) 223 Cal.App.3d 251 [272 Cal.Rptr. 709], the expert's testimony was the only evidence presented in support of the gang enhancement. The expert did not provide any details of the gang's crimes, but based his opinion that the predicate crimes had been committed solely on "hearsay statements from unidentified gang members and information pertaining to arrests of purported gang members . . . ." (*Id.* at p. 259.) The trial court found the expert's testimony insufficient as a matter of law.

■ The evidence here is closer to the conclusory, insufficient evidence presented in *In re Nathaniel C., supra*, 228 Cal.App.3d 990 and *In re Leland D., supra*, 223 Cal.App.3d 251, than it is to the acceptable evidence offered in *Gardeley, supra*, 14 Cal.4th 605. Without any foundation for his knowledge, Lang testified that he "kn[e]w" members of Varrio Viejo had been involved in certain crimes. The only other evidence the Attorney General points to is Lang's testimony as to the two 2004 convictions of purported gang members.[5] Without more, these two convictions do not provide substantial evidence that gang members had "*consistently and repeatedly . . . committed criminal activity listed in the gang statute.*" (*Sengpadychith, supra*, 26 Cal.4th at p. 324.)

Substantial evidence does not mean any evidence, or a mere scintilla of evidence. It is "evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Thomas* (1992) 2 Cal.4th 489, 514 [7 Cal.Rptr.2d 199, 828 P.2d 101].) The evidence presented in this case on the issue of whether Varrio Viejo was a gang within the meaning of section 186.22 does not meet this standard. Therefore, the true finding as to the gang enhancement allegation must be reversed.

*Evidence of a "Pattern of Criminal Gang Activity"*

Alexander also argues there was insufficient evidence of a pattern of criminal activity within the meaning of the statute. As we have already concluded there was insufficient evidence of the gang's primary activities, we need not reach this issue.

---

[5] These two convictions also provide the sole evidence of the third required element—the gang's participation in a pattern of criminal activity. Even if the same evidence, without more, could be used to satisfy both elements, the two convictions here are insufficient to satisfy the primary activity requirement. Lang testified that Varrio Viejo is composed of approximately 105 members. Two assaults committed in 2004, without more, do not provide substantial evidence that gang members "*consistently and repeatedly*" committed the crimes enumerated in the statute. (*Sengpadychith, supra*, 26 Cal.4th at p. 324.)

## III

## DISPOSITION

The street gang enhancement is reversed. In all other respects, the judgment is affirmed. The case is remanded for a new sentencing hearing.

Bedsworth, Acting P. J., and O'Leary, J., concurred.