Filed 9/12/13  In re Michael D. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re MICHAEL D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,  Plaintiff and Respondent,  v.  MICHAEL D.,  Defendant and Appellant. | G046783  (Super. Ct. No. DL041566)  O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Jacki C. Brown, Judge.  Affirmed.

Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

The juvenile court found true allegations Michael D. committed vandalism (Pen. Code, § 594)[1] for the benefit of, at the direction of, or in association with a criminal street gang and with the specific intent to promote, further, or assist in criminal conduct by gang members. (§ 186.22, subd. (d) (section 186.22(d)). The juvenile court declared Michael a ward of the court and granted supervised probation.

Michael challenges the sufficiency of the evidence to support the primary activities and specific intent elements of the section 186.22(d) gang enhancement. He also argues the gang expert's reliance on hearsay violates his Sixth Amendment right to confront adverse witnesses. (*Crawford v. Washington* (2004) 541 U.S. 36, 51-53 (*Crawford*).) In addition, Michael asserts the juvenile court erred by excluding certain defense expert testimony, and by not expressly declaring the vandalism conviction to be a felony as required by Welfare and Institutions Code section 702 (section 702). We agree with his final contention but conclude the error is harmless and affirm the judgment.

FACTS

In late 2011 and early 2012, Michael was detained in juvenile hall on a petition (petition 001) alleging he committed various crimes for the benefit of, and he was an active participant in, Orange Varrio Cypress (OVC). During this incarceration, Michael and other minors caused two major disruptions by banging on the doors of their units and yelling. On both occasions, Michael was heard yelling, "OVC." Michael also caused a third disruption by engaging in what is known as a gang rollcall, in which he repeatedly yelled out his room number and gang affiliation and asked the other juveniles to do the same.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

In early January 2012, a juvenile correctional officer found "OVCX3" carved into the window in Michael's cell. She knew these letters had not been on the window the night before, and that Michael was the sole resident in the cell. As a result, the Orange County District Attorney filed a second petition (petition 002) alleging Michael committed an act of vandalism by carving these letters into the window, and he committed this criminal act with the specific intent to promote, further, and assist in criminal conduct by members of OVC.

At trial, the prosecution called Detective Miguel Cuenca as its gang expert. Cuenca, a 12-year veteran of the Orange Police Department with three years of experience in the department's gang unit, testified he was very familiar with the criminal street gangs in Orange. He had personally investigated OVC related vandalisms, assaults, and assaults with deadly weapons. He had also talked to numerous OVC members and associates, and their family members, girlfriends, and boyfriends. Through work-related courses and various assignments, Cuenca had come into contact with many other Hispanic gang members, including members of the Mexican Mafia. In all, Cuenca estimated he had talked to hundreds of active gang members during his career.

Cuenca testified OVC is an offshoot of Santa Ana's F-Troop gang. In the 1970's several members of F-Troop moved to Orange and started other gangs including OVC. OVC claims the west side of Orange as its territory. OVC has many gang rivals, including the Orange County Criminals, Pearl Street, V.M.L., Dark Side, and Brown Town. They also have allies in gangs known as Bartel Small Town, Anaheim, Highland Street, San Anita, and Walnut Street.

According to Cuenca, as of February 2012, OVC had 20 to 30 members. OVC gang members use various symbols to signify allegiance to their gang, including the names Orange Varrio Cypress, Old Town, Old Towners, Kilifore Park Killers, Los Royal Dukes, Dukes, and Orange, and the letters "OVC, OVECE." Cuenca had found these words, names, and phrases in graffiti, in gang member's tattoos, and on their cell phones,

3

pieces of paper, books, computers, laptops, and MySpace and Facebook pages and postings. Cuenca testified "OVCX3" is frequently used by gang members to denote allegiance to OVC and the Mexican Mafia. This is a common marking that represents "the name of the gang, and the X3 promotes the Mexican Mafia or the Southern California gang subculture."

Based on his knowledge and experience gained through investigating OVC-related crimes, speaking to OVC members and associates and people in the community OVC claims as its turf, and by reviewing police reports and talking to other police officers, Cuenca testified OCV's primary activities are the commission of assaults with deadly weapons, illegal possession of firearms, and sales of methamphetamine. He also testified to two crimes committed by other members of OVC. In 2009, OVC member Josh Alvin Branch was convicted of possession for sale of methamphetamine with a gang enhancement and active participation in a gang. In 2010, OVC member Angela Laura Navarro was convicted of possession of a firearm by a felon and active participation in a gang.

In Cuenca's opinion, Michael was an active participant in OVC at the time of the instant offense, and he committed the crime with the specific intent to benefit the gang. Cuenca testified the gang benefits from Michael's act of vandalism because it claims his cell as OVC territory and instills fear in rival gang members and jail staff. He based this opinion on personal knowledge of OVC, conversations he had with rival gang members, and his review of Michael's prior contacts with law enforcement.

Michael called Tracey Silveira-Zaldivar (Zaldivar), a school psychologist and an expert behavioral analyst to testify. She said she met Michael and his family when Michael was an elementary school student. In 2012, achievement tests indicated Michael's academic skills were that of a nine year old when he was in fact 15 years old. He was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and was attending school under an individualized education plan. Zaldivar explained ADHD is a

4

neurological development disorder that affects the prefrontal cortex and temporal lobe of a person's brain. These two areas regulate impulse and inhibition centers of the brain.

In Zaldivar's opinion Michael met the criteria for a "combined type," or someone who manifests both hyperactivity and impulsivity. In addition, the results of his IQ test suggest he has below average reasoning skills and could be referred to as mildly retarded. Although Michael knows the difference between right and wrong, Zaldivar said he has difficulty assessing the cause and effect of his own actions. In Zaldivar's interactions with Michael, she noticed his ADHD manifesting in his blurting out words, acting out, poking, and playing with objects, constant movement, and tendency to throw things. Although Zaldivar recommended Michael receive medication for this condition, his parents had not followed her recommendation. In Zaldivar's opinion, Michael's act of carving OVCX3 was a manifestation of the impulsive behavior associated with ADHD, although it may have occurred for other reasons.

DISCUSSION

1. *Primary Activities*

Michael first challenges the sufficiency of the evidence to prove the primary activities of OVC. (§ 186.22, subds. (e) and (f).) Specifically, he claims Cuenca's testimony about OVC's primary activities was impermissibly based on unreliable hearsay and insufficient to show the chief or principal occupations of the gang.

"When an appellant challenges the sufficiency of the evidence to support a conviction, the appellate court reviews the entire record to see "'whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" [Citation.] We view the facts in the light most favorable to the judgment, drawing all reasonable inferences in its support. [Citations.] We do not reweigh the evidence,

5

resolve conflicts in the evidence, or reevaluate the credibility of witnesses. [Citations.]" (*People v. Cochran* (2002) 103 Cal.App.4th 8, 12-13, overruled on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12.)

Michael challenges Cuenca's testimony concerning OVC's primary activities and argues Cuenca relied solely on "unreliable hearsay" to form his opinion OVC members consistently and repeatedly committed assaults with deadly weapons, illegally possessed firearms, and sold methamphetamine. It is true Cuenca based his opinion, at least in part, on hearsay evidence. However, it is also true otherwise inadmissible evidence, like hearsay, can provide a proper basis for a gang expert's opinion so long as it is reliable. (*People v. Gardeley* (1996) 14 Cal.4th 605, 618-619.) And, while Michael questions the reliability of Cuenca's hearsay sources, there is nothing in the record to support this argument.

Leaving aside hearsay, Michael ignores the fact Cuenca testified he personally investigated OVC crimes, and had other personal knowledge about the gang's origins, culture, and criminal activities. Cuenca also testified about two specific predicate crimes involving other OVC members, and the prosecutor submitted court documents supporting this testimony. Thus, this is not a case where the expert provided only conclusory testimony as in *In re Alexander L.* (2007) 149 Cal.App.4th 605, 611-612, or vague, nonspecific hearsay as in *In re Nathaniel C.* (1991) 228 Cal.App.3d 990 and *In re Leland D.* (1990) 223 Cal.App.3d 251.

In short, substantial evidence shows the primary activities of OVC include the commission of one or more of the crimes listed in section 186.22, subdivision (e).

*2. Specific Intent*

Michael next challenges the sufficiency of the evidence he acted with the specific intent to promote, further or assist any criminal conduct by gang members as required by section 186.22(d). Michael contends "where a defendant acts alone, it cannot

6

be inferred from the mere commission of the current offense that he intends to facilitate the criminal conduct of other gang members." Furthermore, he contends the prosecution was required to present evidence "explaining what criminal conduct the etching is intended to facilitate." He cites *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*) in support of these contentions. Michael's reliance on *Rodriguez* is misplaced.

In *Rodriguez*, our Supreme Court held the substantive offense of active participation in a criminal street gang (§ 186.22, subd. (a)) may not be committed by a lone gang member. (*Rodriguez*, *supra*, 55 Cal.4th at p. 1132.) In reaching this result, the court contrasted the statutory purpose and language of the substantive offense with that of the enhancement. The court stated, "Section 186.22(a) and section 186.22(b)(1) strike at different things. The enhancement under section 186.22(b)(1) punishes gang-related conduct, i.e. felonies committed with the specific intent to benefit, further, or promote the gang. [Citation.] However, '[n]ot every crime committed by gang members is related to a gang.' [Citation.] As such, with section 186.22(a), the Legislature sought to punish gang members who acted *in concert* with other gang members in committing a felony regardless of whether such felony was gang related. [Citation.]" (*Rodriguez*, *supra*, 55 Cal.4th at p. 1138.) Thus, the substantive offense requires evidence the defendant acted with at least one other gang member, but not evidence the defendant acted with the specific intent required for the enhancement. (*Ibid.*)

The *Rodriguez* court also noted a lone gang member may be subjected to the enhanced penalties provided under Section 186.22, subdivision (b)(1) (section 186.22(b)(1)). (*Rodriguez*, *supra*, 55 Cal.4th at p. 1139.) We believe the same is true with respect to the enhanced penalties provided under section 186.22(d). All of the points quoted above contrasting the section 186.22(b)(1) enhancement from the section 186.22 subdivision (a)(1) substantive offense, are equally applicable to the section 186.22(d) enhancement. Both enhancements apply to persons convicted of crimes "committed for the benefit of, at the direction of, or in association with any criminal

street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subds. (b)(1) and (d).) Accordingly, we reject Michael's claim a gang member acting alone may not be subjected to the section 186.22(d) enhancement. Michael also argues due process required the prosecution to prove he committed vandalism with the intent to facilitate some other specific identifiable gang-related criminal conduct. However, *Rodriguez* expressly rejected this argument as to the section 186.22(b)(1) enhancement, and held due process is satisfied by the statutory requirements "that the felony be gang related and that the defendant act with a specific intent to promote, further, or assist the gang . . . ." (*Rodriguez, supra*, 55 Cal.4th at p. 1139.) This holding also applies with equal force to the section 186.22(d) enhancement.

In this case, while Michael acted alone, the evidence supports the jury's determination the vandalism was gang related and he committed it with the specific intent to promote, further, or assist criminal conduct by OVC members. He had previously incited other gang members to yell their gang's name in a rollcall fashion. Then, he decided to etch one of OVC's identifying symbols in his cell window. It is difficult to conceive of any non-gang-related reason for this particular act of vandalism, or that he acted without the requisite specific intent. Hence, substantial evidence supports the jury's true finding on the section 186.22(d) enhancement.

*3. Crawford*

Michael also claims Cuenca's expert testimony violated *Crawford*, to the extent he relied on hearsay. As a threshold matter, we note Michael did not object on confrontation grounds at trial and, as the Attorney General points out, the issue was thus forfeited. (Evid. Code, § 354; *People v. Riccardi* (2012) 54 Cal.4th 758, 801.) On the merits, the use of hearsay by experts in criminal street gangs has long been condoned. (*Gardeley, supra,* 14 Cal.4th at pp. 618-620.)

8

Nothing in *Crawford* undermined well-established rules concerning the use of expert testimony. (*People v. Thomas* (2005) 130 Cal.App.4th 1202, 1209-1210.) As the *Thomas* court observed, "*Crawford* does not undermine the established rule that experts can testify to their opinions on relevant matters, and relate the information and sources upon which they rely in forming those opinions. This is so because an expert is subject to cross-examination about his or her opinions and additionally, the materials on which the expert bases his or her opinion are not elicited for the truth of their contents; they are examined to assess the weight of the expert's opinion. *Crawford* itself states that the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' (*Crawford*, *supra*, 541 U.S. at p. 59, fn. 9, citing *Tennessee v. Street* (1985) 471 U.S. 409, 414.)" (*People v. Thomas*, *supra*, 130 Cal.App.4th at p. 1210.)

Questions directed at the reliability of Cuenca's sources of information were a proper basis for cross-examination, but those questions go to the weight to be given his opinion, not its admissibility. There was no violation of *Crawford*.

*4. Defense Expert Testimony*

In an effort to prove Michael acted impulsively by carving OVCX3 into his cell window, and to negate his ability to form the requisite specific intent, defense counsel sought to introduce evidence of his mental disorders. During a pretrial discussion on the matter, the juvenile court ruled Zaldivar could testify about the most recent studies and understanding of how the brain processes information, and analyze Michael's test results and diagnosis. But the juvenile court precluded the defense from presenting evidence Michael could not "entertain such thoughts." On appeal, Michael claims the juvenile court improperly limited the scope of his expert's testimony. We disagree.

9

Section 28, subdivision (a) provides, "Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, . . . or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, . . . when a specific intent crime is charged." Section 28 "precluded jury consideration of mental disease, defect, or disorder as evidence of a defendant's *capacity* to form a requisite criminal intent, but it did not preclude jury consideration of mental condition in deciding whether a defendant *actually* formed the requisite criminal intent." (*People v. Williams* (1997) 16 Cal.4th 635, 677.)

Section 29 provides, "In the guilt phase of a criminal action, any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to, purpose, intent, knowledge, or malice aforethought, for the crimes charged. The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact." Together, "Sections 28 and 29 permit introduction of evidence of mental illness when relevant to whether a defendant actually formed a mental state that is an element of a charged offense, but do not permit an expert to offer an opinion on whether a defendant had the mental capacity to form a specific mental state or whether the defendant actually harbored such a mental state." (*People v. Coddington* (2000) 23 Cal.4th 529, 582, fns. omitted, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046.)

Applying these principles here, the juvenile court properly limited the scope of the defense expert's testimony to providing background information on Michael's ADHD diagnosis, and the possible effects of this condition on his impulse control. In fact, Valdez testified the condition causes severe inhibition deficiencies, which means those affected have poor self-control and lack understanding of the cause

10

and effects of the actions. The only limitation placed by the juvenile court was that Valdez could not testify whether Michael had or did not have the mental state required by the offense charged. That determination is for the trier of fact to decide. (*People v. Smithey* (1999) 20 Cal.4th 936, 968-969.)

## 5. *Welfare and Institutions Code Section 702*

Section 702 states in part, "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." Michael claims, the Attorney General concedes, and we are convinced the juvenile court failed to make the required section 702 declaration with respect to the gang-related vandalism in petition 002.

In spite of this failure, "the record as a whole establishes the juvenile court was aware of its discretion to treat the offense as a misdemeanor and to state the misdemeanor-length confinement" (*In re Manzy W*. (1997) 14 Cal.4th 1199, 1208 (*Manzy*)), but instead stated the felony-length confinement. During the disposition hearing, the juvenile court did declare a separate vandalism charge in a separate petition (petition 003) was to be treated as a misdemeanor. This convinces us the court was aware it had discretion to likewise treat the vandalism charged in petition 002 as a misdemeanor, but instead treated the matter as a felony.

For all of these reasons here, unlike in *Manzy,* it would be redundant to remand the matter to the juvenile court for an express declaration under section 702 and the error is harmless. (*Id.* at pp. 1210-1211.)

11

DISPOSITION

The judgment is affirmed.


THOMPSON, J.

WE CONCUR:


ARONSON, ACTING P. J.


FYBEL, J.