Filed 7/11/14  P. v. Posey CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B248786 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA387173) |
| v. | |
| MILLER WESTLEY POSEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Anne H. Egerton, Judge.  Affirmed.

Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Mark E. Weber, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Miller Westley Posey challenges the trial court's denial of his motion to suppress evidence under Penal Code section 1538.5.[1]  He argues that because the arresting officer's frisk of his person violated the Fourth Amendment, the subsequent evidence obtained—his confession to participation in a 2007 murder—should have been excluded under the fruit of the poisonous tree doctrine.  (See *Wong Sun v. United States* (1963) 371 U.S. 471, 484–488 (*Wong Sun*); *In re Richard G.* (2009) 173 Cal.App.4th 1252, 1262 (*Richard G.*).)  Because we find no error, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL SUMMARY

On July 28, 2011, at about 3:30 a.m., several plainclothes police officers from the Los Angeles Police Department criminal gang homicide division were conducting surveillance from a white van in connection with a homicide that had occurred the day before.  When the officers noticed a grey 2009 Chevrolet Impala circling the area, they radioed a nearby group of uniformed officers to watch for this vehicle.  The plainclothes officers then saw appellant exit the driver's seat of the Impala, while a woman exited from the front passenger seat.

Appellant and the passenger then approached a nearby house.  Two men met them at the front porch.  The plainclothes officers saw all four of them looking in the direction of the white van.  An officer heard one of the males ask, "Who's in the van right there?"  For the purposes of officer safety, the plainclothes officers then drove to a different, nearby location.  About 10 or 15 minutes later, the Impala drove past the white van another two times.  Each time, as the Impala was parallel to the van, the Impala slowed down, and only sped up again once it had passed the van.  The plainclothes officers noticed that appellant had switched positions, and was now in the passenger seat.

The plainclothes officers twice noticed the Impala's failure to stop at a posted stop sign.  This failure to comply with traffic laws, combined with the suspicious behavior of

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

the Impala occupants and the recent homicide, led the officers to radio the uniformed officers, asking them to pull over the Impala. As the uniformed officers approached the Impala, they observed the Impala failing to stop at yet another stop sign. When the officers turned on their patrol lights to initiate a traffic stop, the Impala pulled into a driveway. Three uniformed officers exited their black and white patrol vehicle. One of them, Officer Medina, approached the front passenger door of the Impala, which was closest to appellant, who was sitting in the front passenger seat of the Impala. At the time of the incident, Officer Medina had been employed as an officer with the Los Angeles Police Department for approximately four and a half years. He described appellant's actions and his demeanor: "He was very nervous and he seemed agitated and he kept moving from side to side. Kept turning around . . . [¶] looking [in] different directions . . . ." When Medina asked appellant about his identification, appellant's answers made no sense. "He kept saying, he kept telling me "'that white van, they're out to get me.'"

Next, three or four occupants of the home exited the house. They stood close to the uniformed officers in what Medina stated was an attempt to approach the Impala. Medina and the other officers told the occupants to step away from the Impala. Medina then asked appellant for identification; appellant stated that he did not have any on his person.

About a minute after the initial stop, Medina asked appellant to step out of the Impala. Medina noted appellant's large stature, standing at approximately 6 feet 2 inches and weighing approximately 230 to 250 pounds. Appellant stepped out of the Impala and, without being prompted by Medina, placed his hands behind his back. At that point, Medina could no longer see what he was doing with his hands. Medina then conducted a frisk to determine whether appellant had a weapon. Medina also described other reasons that he decided to frisk appellant, including appellant's demeanor, the time of night, the location of the interaction, and the fact that occupants from the home began to crowd around the officers. While conducting the frisk, Medina felt a hard object in appellant's right front pocket, which he recognized to be a handgun.

3

Appellant was then arrested. Los Angeles Police Detective Theodore Hammond learned of appellant's arrest. He had been investigating appellant in connection with a 2007 murder, and he decided to question appellant about that crime. During questioning, appellant admitted that he was present during the 2007 murder.[2]

As a result of this admission, the Los Angeles County District Attorney filed an information charging appellant with the 2007 murder, in violation of section 187, subdivision (a). The information also charged appellant with two enhancements: a gang-enhancement under section 186.22, subdivision (b)(1)(C); and an enhancement for the intentional discharge of a firearm, which was used to carry out the murder, under section 12022.53, subdivisions (d) and (e)(1).

Appellant moved to suppress the evidence obtained during the interrogation by Detective Hammond on the grounds that Medina's frisk was improper under the Fourth Amendment. As a result, he argued the subsequent confession should be excluded from evidence. The trial court denied this motion. The court stated that, under the totality of the circumstances, there were sufficient articulable facts to justify the frisk of appellant.

After a jury convicted appellant of first-degree murder and found the enhancement allegations to be true, the trial court sentenced appellant to serve 50 years to life in prison. Appellant appeals this conviction on the grounds that his confession to involvement in the 2007 murder should have been suppressed because the frisk was improper under the Fourth Amendment, and was conducted after too much of a delay from the original stop.

## DISCUSSION

### I

"The standard of appellate review of a trial court's ruling on a motion to suppress evidence is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence." (*People v. Glaser* (1995) 11 Cal.4th

---

[2] Though appellant admitted that he was present during the 2007 homicide, he said that another man, David Means, had pulled the trigger. Eyewitness testimony, however, established that the shooter matched appellant's description, rather than Means's.

354, 362.)  When assessing whether substantial evidence exists, we examine the entire record in the light most favorable to the People, presuming the existence of every fact that can reasonably be deduced from the evidence and drawing all inferences reasonably supported by the evidence in favor of the trial court's judgment.  (*People v. Hatch* (2000) 22 Cal.4th 260, 272; *In re Leland D.* (1990) 223 Cal.App.3d 251, 257.)  "In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment."  (*People v. Glaser*, *supra,* at p. 362.)

II

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  (U.S. Const., 4th Amend.)  A "stop and frisk," which is the particular type of search and seizure at issue in this case, is a serious intrusion into an individual's privacy, and therefore violates the Fourth Amendment unless it is objectively reasonable.  (*Terry v. Ohio* (1968) 392 U.S. 1; *People v. Souza* (1994) 9 Cal.4th 224.)  For every stage of the stop and frisk, the arresting officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrants that intrusion."  (*Terry v. Ohio*, *supra,* at p. 21; *People v. Souza*, *supra,* at p. 224.)  While the officer does not need probable cause to arrest, a stop and frisk cannot be justified based upon mere speculation or a hunch that the individual might be dangerous.  (*People v. Wells* (2006) 38 Cal.4th 1078, 1082–1083.)

Because each intrusion must be reasonable, we analyze the incident sequentially: (1) the initial traffic stop; (2) Medina's order to have appellant step out of the vehicle; (3) the frisk; and (4) all subsequent events leading to appellant's confession.

*A. Traffic Stop*

Stopping a vehicle for a traffic violation constitutes a "seizure" for Fourth Amendment purposes.  (*People v. Rodriguez* (2006) 143 Cal.App.4th 1137, 1148.) "Therefore, in order for such a stop to be lawful it must be based at least on a 'reasonable

5

suspicion' the driver has committed a traffic law violation or some other criminal activity is afoot." (*Ibid.*) Here, the officers observed the Impala's failure to stop at a posted sign on 102nd and Spring Street in violation of Vehicle Code section 22450, subdivision (a). Appellant does not assert that the initial traffic stop was unwarranted or unreasonable.

*B. Order to Exit the Vehicle*

Once an officer has lawfully detained a motorist, the officer may direct all occupants to exit the vehicle. (*Pennsylvania v. Mimms* (1977) 434 U.S. 106); *Maryland v. Wilson* (1997) 519 U.S. 408; *People v. Lomax* (2010) 49 Cal.4th 530, 564.) Because the government has a legitimate interest in protecting law enforcement officers, it is immaterial whether the individual who is ordered out of the vehicle is the passenger or the driver. (*Maryland v. Wilson*, *supra,* pp. 413–415; *People v. Lomax*, *supra,* at p. 564.) The officer's reasonable belief that the passenger appears nervous, and therefore threatens the officer's safety, can justify the officer in ordering the passenger out of the car. (*Maryland v. Wilson*, *supra,* at p. 410; *People v. Lomax*, *supra,* at p. 564.)

Here, approximately one minute after Medina approached the vehicle and began his discussion with appellant, Medina asked appellant to step out of the vehicle. Appellant does not argue that Medina did not have the right to order him to step outside of the vehicle. Since this stage of the stop and frisk did not violate the Fourth Amendment, we address the question whether Medina had the right to frisk appellant.

*C. Frisk*

Appellant argues that the frisk search was unreasonable as a matter of law because his behavior was not objectively suspicious. In determining whether a frisk is reasonable, we ask whether a reasonably prudent officer would be warranted in the belief that his safety or the safety of others is in jeopardy. (*Terry v. Ohio*, *supra*, 392 U.S. at pp. 24, 30; *People v. Medina* (2003) 110 Cal.App.4th 171, 176.) The officer does not need to be certain that the individual is armed, nor does the officer need probable cause to arrest the individual. (*Terry v. Ohio*, *supra*, at p. 21; *In re H.M.* (2008) 167 Cal.App.4th 136, 143.) The officer is entitled to draw specific reasonable inferences in light of his or her experience in determining whether a frisk is justified. (*Terry v. Ohio*, *supra*, 392 U.S. at

6

p. 21; *In re H.M.*, *supra*, at pp. 136, 143.)  However, the search cannot be premised on an officer's inarticulate hunch that the individual may be dangerous; the officer must "point to specific and articulable facts which . . . warrant that intrusion." (*Terry v. Ohio*, *supra*, at p. 21.)

In *In re H.M.*, *supra,* 167 Cal.App.4th at p. 141, the Court held that a frisk was justified where appellant was "in an area known for . . . gang activity, was looking around [and] appeared nervous."  This, "coupled with [the officer's] experience in the area and the fact he was present to investigate a shooting that had occurred one block away the day before, justified the patsearch." (*Ibid.)*

The articulable facts that Medina presented at trial and which, we infer, were accepted by the trial court, substantiate the reasonableness of Medina's suspicion that appellant might have been dangerous.  Though the frisk cannot be justified solely based upon the fact that it took place in a high-crime neighborhood, the trial court properly found that the totality of the circumstances warranted the intrusion.  (See *In re Tony C.* (1978) 21 Cal.3d 888, 897.)  Similar to the appellant in *In re H.M.*, appellant in this case appeared nervous and agitated, he kept moving from side to side, turning away from Medina and looking in different directions, and his answers to Medina's questions about his identity made no sense.  Medina also testified that the time of night, 3:30 a.m., was a factor in his decision to frisk appellant.  Additionally, even though there were two other officers at the scene, appellant's large stature at 230 to 235 pounds, could reasonably lead an officer to believe the officer's safety was threatened.  As a result of the totality of these circumstances and Medina's four and a half years of experience as an officer with the Los Angeles Police Department, Medina frisked appellant to determine whether he was carrying a weapon.  On review, we find that Medina presented sufficient articulable facts to warrant this particular intrusion.  His testimony is substantial evidence that the decision to frisk appellant was reasonable for Fourth Amendment purposes.

Appellant also argues that the frisk was "conducted after too much of a delay from the original stop" and that the officers should have allowed appellant to enter the house while writing the driver a traffic ticket.  However, a driver and passenger can be

temporarily seized for the duration of the stop, until the officers have no further need to control the scene. (*Arizona v. Johnson* (2009) 555 U.S. 323, 333 (*Johnson*); *Brendlin v. California* (2007) 551 U.S. 249, 255; *People v. Torres* (2010) 188 Cal.App.4th 775, 785 (*Torres*).) An officer can ask questions unrelated to the traffic stop without additional justification as long as the questions do not measurably or unreasonably extend the duration of the stop. *(Johnson, supra,* at p. 333; *Torres, supra,* at p. 785.)

In *Johnson*, *supra*, 555 U.S. 323, 333–334, the court found that a frisk that occurred within minutes of the original traffic stop did not measurably extend the duration of the stop. In *Torres*, *supra,* 188 Cal.App.4th 775, 785, 10 to 15 minutes elapsed between the initial traffic stop and the subsequent search. There, the court held that this amount of time was not unreasonable. (*Ibid.*) Here, the amount of time that elapsed between the initial stop and the subsequent frisk is even less than the amount of time that elapsed in either *Johnson* or *Torres;* it occurred within a minute of the initial detention. There was no unreasonable delay.

Based upon the totality of the circumstances, we conclude the frisk was legally justified.

*D. Subsequent Events and Confession*

Appellant does not raise issues concerning the events that occurred after the frisk, leading up to his confession. He merely argues that if the frisk was unconstitutional, then the subsequent confession should have been excluded from evidence under the fruit of the poisonous tree doctrine. (*Wong Sun v. United States*, *supra,* 371 U.S. at p. 487; *In re Richard G.*, *supra,* 173 Cal.App.4th at p. 1262.) However, respondent argues that even if the initial frisk was unconstitutional, the subsequent confession was sufficiently attenuated under this doctrine so that exclusion from evidence was not required. (*Wong Sun* at p. 487; *In re Richard G.* at p. 1262.) We need not address this argument because there was substantial evidence presented at trial to show that the frisk did not violate appellant's Fourth Amendment rights. Therefore, this case raises no fruit of the poisonous tree issue.

8

**CONCLUSION**

Based upon our conclusion that the frisk search was justified, we find no Fourth Amendment violation.  We affirm the trial court's judgment.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                        EPSTEIN, P. J.

We concur:


MANELLA, J.


EDMON, J*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.