Filed 2/25/14  P. v. Rice CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL JAMES RICE,<br><br>　　　Defendant and Appellant. | H039699<br>(Monterey County<br>Super. Ct. No. SS121526) |

**INTRODUCTION**

Defendant Michael James Rice pleaded no contest to possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1))[1] and active participation in a criminal street gang (§ 186.22, subd. (a)), and he admitted a prior felony conviction.  The trial court imposed, but suspended execution of a two-year prison sentence and placed defendant on probation for three years.  In March 2013, the trial court found defendant violated probation.  The court executed the previously suspended two-year prison sentence.

On appeal, defendant argues that the trial court erred in finding that he violated probation by associating with known gang members.  For the reasons stated below, we will affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *The Underlying Offense and Sentence*[2]

On August 8, 2012, Salinas police officers executed a search warrant on defendant's home. While driving to the home, the officers found defendant on a nearby street drinking alcohol with two Norteño gang members. Defendant was wearing gang-related clothing and accessories.

The officers transported defendant to his home, and the officers conducted a search of the home. In defendant's bedroom, the officers located gang paraphernalia and ammunition. In other parts of the home, the officers found gang-related clothing and accessories, ammunition, an unloaded gun magazine, and a loaded semi-automatic weapon.

After the search, defendant's mother told the officers that defendant was "known to carry firearms because he is a Fremont Street Norteño gang member and has been associating with the gang since the age of thirteen." She also told the officers that defendant was in a feud with ranking gang members.

Thereafter, the officers took defendant to the county jail, where he admitted he was an active Norteño gang member and requested to be housed with active gang members.

On August 21, 2012, defendant pleaded no contest to possessing a firearm by a felon (§ 29800, subd. (a)(1)) and active participation in a criminal street gang (§ 186.22, subd. (a)), and he admitted a prior conviction underlying the firearm offense.

The probation report included defendant's statement that he began associating with Northerner gang members, specifically the Fremont Street gang, at the age of 15.

On October 2, 2012, the court imposed a two-year prison sentence, but suspended execution of that sentence. The court placed defendant on probation with various

_____

[2] The facts as to the underlying offense are based on the probation report.

2

conditions. One of defendant's conditions provided, "Not associate with any individuals you know, have reason to know, or are told by the Probation Officer to be gang members . . . ." Another condition provided, "Totally abstain from the use of alcoholic beverages, not purchase or possess alcoholic beverages, and stay out of places you know alcohol to be the main item of sale."

## B. *Probation Violation and Probation Revocation Hearing*

On January 29, 2013, the probation officer filed a petition pursuant to section 1203.2 to revoke defendant's probation. The petition alleged that defendant violated probation by: (1) "[a]ssociating with gang members" and (2) "[k]nowingly possess[ing] alcohol."

On March 28, 2013, the trial court conducted a probation revocation hearing at which Salinas Police Officer Derek Gibson testified on behalf of the prosecution. Gibson testified that he was assigned to the Monterey County Gang Task Force for three years, and he had specialized training and field experience in gang recognition and gang investigations. He was familiar with the Fremont Street gang, which was a subset of the Norteño gang. In the past, he had contacted and arrested several Fremont Street gang members. In the two years prior, he had worked with several informants from the Fremont Street gang. Gibson approximated that there were 30 active members in the Fremont Street gang. He also stated that "[i]t's rare, but it could be possible" for a gang member to not know every other member of the gang.

Officer Gibson testified that on January 28, 2013, he was on duty on the 1400 block of Linwood Drive. He noticed a parked car containing three occupants. As the officer stopped next to the car, the car accelerated from the curb. Gibson followed the car and saw the backseat passenger throw what appeared to be a beer can out of the window.

Officer Gibson stopped the car and contacted the vehicle's occupants. Defendant was the backseat passenger. Gibson knew defendant because in the underlying conviction, the officer had written the search warrant for defendant's home. Based on

3

that prior arrest, Gibson knew that defendant was on probation and that defendant was an active gang member in the Fremont Street gang.

Officer Gibson also recognized the front seat passenger, Efrain Perez, from prior contacts and a prior case that other officers from his unit had handled. The officer knew that Perez was a Fremont Street gang member and knew Perez was on probation. Another officer conducted a search of Perez and recovered a red and white "Norcal" beanie in Perez's jacket pocket. Gibson associated the beanie with the Norteño street gang.

Officer Gibson recognized the driver, Juan Lopez, after the officer had researched Lopez's name, nickname, and moniker. The officer noticed that Lopez had a gang-related tattoo of the roman numerals "XIV" on the web of his left hand. Gibson believed that Lopez was an active Fremont Street gang member based on the prior documentation by officers, who have contacted Lopez in the past, and on Lopez's prior admission of his Fremont Street gang membership.

During the investigation, Officer Gibson learned that Perez and Lopez both lived at a residence on the 1400 block of Linwood Drive and that all three individuals were coming from the residence before they were stopped. Gibson went to the Linwood residence to conduct a probation compliance check on Perez's bedroom. During the compliance check, the officer saw a large quantity of Norteño gang-related tagging inside a bedroom belonging to a female resident.

Based on Officer Gibson's investigations with the gang task force, he was aware that the Fremont Street gang typically congregated in the 500 and 600 blocks of Fremont Street, around Madeira, Terrace, and Carr Street. Lopez's previous residence on Terrace Street was a common place where Fremont Street gang members congregate and drink alcohol in the front yard. In the underlying offense, Gibson detained defendant around Lopez's Terrace Street residence before the execution of the search warrant.

4

Following the testimony, defense counsel argued that there was no proof that the Fremont Street gang or the Norteño gang were criminal street gangs, as there was no evidence that there were "three or more members . . . associating for the primary purpose of committing specified crimes." Additionally, defense counsel argued there was insufficient evidence to support that Lopez and Perez were active gang members, nor was there evidence that defendant knew that Lopez and Perez were active gang members.

On rebuttal, the prosecution pointed out that in the arrest that led to the underlying conviction, defendant was around Lopez's residence on Terrace Street. This area was known as a place where Fremont Street gang members congregate. The prosecution argued that based on that prior contact with Lopez, the trial court could reasonably conclude that defendant knew Lopez was a member of the same gang organization. Additionally, the prosecution noted that prior to being stopped by Officer Gibson, defendant was with Lopez and Perez at the Linwood residence, where there was gang indicia inside. Lastly, the prosecution asserted that Gibson, who had training and experience in gang investigations, indicated that the Fremont Street gang was a criminal street gang.

The trial court found "based on the evidence that was submitted and applying . . . some common sense," defendant violated probation on the grounds that he knowingly associated with gang members and that he knowingly possessed alcohol.

At sentencing on May 14, 2013, the trial court imposed the previously suspended prison sentence of two years.

**DISCUSSION**

Defendant contends that the trial court erred in finding that he violated probation by knowingly associating with other gang members. He argues that there was insufficient evidence that the Fremont Street gang or the Norteño gang were criminal street gangs, and there was insufficient evidence that he knew Perez and Lopez were gang members. Defendant also contends that even though the trial court also found a

5

violation of the alcohol condition, reversal is warranted to determine whether the court would have revoked probation solely based on the alcohol violation.

Section 1203.2, subdivision (a), authorizes the trial court to revoke probation after proper notice and a hearing "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses." Once a court had determined that a violation of probation has occurred, it must "decide whether under all of the circumstances the violation of probation warrants revocation." (*People v. Avery* (1986) 179 Cal.App.3d 1198, 1204.)

The trial court is vested with broad discretion in determining whether to reinstate probation following revocation of probation (*People v. Jones* (1990) 224 Cal.App.3d 1309, 1315), and the trial court's decision to revoke probation is reviewed for an abuse of discretion. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443 (*Rodriguez*); *People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.) " '[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . .' " (*Rodriguez, supra*, at p. 443.) However, "the facts supporting a revocation of probation must be proven by a preponderance of the evidence." (*Id.* at p. 439.) Also, "the evidence must support a conclusion [that] the probationer's conduct constituted a willful violation of the terms and conditions of probation." (*People v. Galvan* (2007) 155 Cal.App.4th 978, 982; *People v. Zaring* (1992) 8 Cal.App.4th 362, 378-379.)

Applying this deferential standard of review, we conclude that the trial court did not err in finding defendant violated probation. One of defendant's probation conditions prohibited him from associating with any individuals he knew, or had reason to know to be a gang member. Nevertheless, defendant, who was an admitted Fremont Street gang

6

member, was in a vehicle with Perez and Lopez, who were also Fremont Street gang members. At the probation revocation hearing, Officer Gibson testified that he knew Perez was a Fremont Street gang member based on previous personal contacts. The officer also knew that Lopez was a Fremont Street gang member based on prior documentation by officers who have contacted Lopez in the past and Lopez's admitted gang membership.

There was also sufficient evidence that defendant *knew* Perez and Lopez were gang members. Officer Gibson testified that the Fremont Street gang had about 30 active gang members and that "[i]t's rare, but it could be possible" that a Fremont Street gang member not know every other member of the gang. Additionally, in the underlying offense, defendant was detained around Lopez's Terrace Street residence before the search of defendant's home. The area around Lopez's Terrace Street residence was known as a place where the Fremont Street gang typically congregate. Based on this evidence, the trial court could have reasonably inferred that defendant had known Lopez before defendant violated probation and that defendant knew Lopez was a fellow Fremont Street gang member. Moreover, on the day of the probation violation, defendant was coming from the Linwood Drive residence, where Perez and Lopez were residing. Inside the Linwood residence, there was visible gang-related tagging in one of the rooms. Lopez also had a "XIV" tattoo on the web of his hand, and Perez had a red and white "Norcal" beanie in his possession. As a Fremont Street gang member, defendant would have likely recognized the tagging inside the residence, Lopez's tattoo, and Perez's beanie were associated to the Norteño gang. Therefore, based on a preponderance of evidence, the trial court could have reasonably concluded that defendant knowingly associated with gang members.

We reject defendant's claim there was insufficient evidence that the Fremont Street gang or the Norteño gang fell within the statutory definition of "criminal street gang." (§ 186.22, subd. (f).)[3] In this case, one of defendant's underlying convictions was for active participation in a criminal street gang (*id*., subd. (a)). A conviction for active participation in a criminal street gang requires that the gang in question falls within the statutory definition of a "criminal street gang." (See *Id*., subds. (a) & (f).) In the underlying offense, defendant admitted he was a Fremont Street Norteño gang member, and there was no indication that he was involved with any other gang. Thus, when defendant was convicted for a violation of section 186.22, subdivision (a), it was implied that the Fremont Street gang met the statutory definition of a "criminal street gang" (*id*., subd. (f)).

Furthermore, Officer Gibson, who was on the Monterey County Gang Task Force for three years and had training and experience in gang investigations and gang recognition, indicated that the Fremont Street gang was a criminal street gang. He testified that he was familiar with the Fremont Street gang through personally contacting several of its members and working with some informants. In addition, he had arrested several Fremont Street gang members in the past. Throughout his testimony, Gibson also discussed gang indicia (i.e., clothing, tagging, and tattoos) that were associated with the Fremont Street gang.

Although Officer Gibson did not expressly testify that the Fremont Street gang's primary activities were one of the specified crimes as set forth in section 186.22,

---

[3] Section 186.22, subdivision (f) states: "As used in this chapter, 'criminal street gang' means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

subdivision (f) or that the members engaged in a pattern of criminal activity, his testimony was sufficient for the purposes of the probation revocation hearing. (Cf. *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 348 [observing that the "limited nature of [the] inquiry [at a probation revocation hearing] may not involve or invoke presentation of all evidence bearing on the underlying factual allegations"].) The relevant question on appeal is not whether the prosecution presented sufficient evidence to establish beyond a reasonable doubt that the Fremont Street gang is a "criminal street gang," as would be required to sustain a criminal conviction or to support a gang allegation. (Contra, *In re Alexander L.* (2007) 149 Cal.App.4th 605.) Rather, the question is whether there was sufficient evidence presented at the probation revocation hearing to support a finding, by a preponderance of the evidence, that the Fremont Street gang was a criminal street gang. We believe that for the purposes of a probation revocation hearing, Gibson's testimony was sufficient to support a finding that the Fremont Street gang was a criminal street gang.

Accordingly, the trial court did not err in revoking defendant's probation as there was sufficient evidence to support a finding that defendant knowingly associated with gang members.[4]

**DISPOSITION**

The judgment is affirmed.

---

[4] Because we determine that the trial court properly revoked probation based on defendant's violation of the gang condition, we need not determine whether the court could have revoked probation solely on the violation of the alcohol condition.

_____
                    Premo, J.

WE CONCUR:

_____
      Rushing, P.J.

_____
      Márquez, J.